**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **PATRICIA "KAY" WHATLEY** | **CIVIL DOCKET NO. 1:21-CV-01185** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **JEROME HOPEWELL, ET AL** | **MAGISTRATE JUDGE JOSEPH H.L. PEREZ-MONTES** |

---

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON MS. WHATLEY'S ADA CLAIMS (R. DOC. 24)**

---

Respectfully Submitted:

**MOST & ASSOCIATES**

*/s/ Hope A. Phelps*
**HOPE PHELPS (La. Bar No. 37259)**
**WILLIAM MOST (La. Bar No. 36914)**
201 St. Charles Ave., Ste. 114, # 101
New Orleans, LA 70170
Tel: 504.256.4615
Email: hopeaphelps@outlook.com
***Counsel for Plaintiff, Patricia "Kay" Whatley***

## TABLE OF CONTENTS

MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ON MS. WHATLEY'S ADA CLAIMS (R. DOC. 24) ................................................ 4

I.    INTRODUCTION ............................................................................................................ 4

II.   FACTUAL BACKGROUND ........................................................................................... 4

    A.   Kay Whatley was the only woman Deputy Marshal in the Alexandria City Marshal's
Office. .................................................................................................................................. 4

    B.   Defendant demoted Ms. Whatley to a clerical position after she returned from knee
surgery, failed to engage Ms. Whatley in an interactive process, and placed her in a position
that exacerbated her knee injury. ........................................................................................... 6

    C.   After Ms. Whatley's reinjury, Defendant failed to engage her in an interactive process,
falsely claimed no sedentary or light duty positions were available, delayed her return to work
for over two months, and demoted her when she returned. ....................................................... 8

    D.   When Ms. Whatley returned to work, Defendant demoted her, failed to provide her with a
reasonable accommodation, and retaliated when she requested a reasonable accommodation,
and stated that she would enforce her rights through the legal process ..................................... 12

III.  LEGAL STANDARD ..................................................................................................... 15

IV.   DISCUSSION ................................................................................................................ 15

    A.   Defendant's Motion should be denied because it relies on thirteen disputed material facts.
15

    B.   Defendant's argument that he did not subject Kay Whatley to an "adverse employment
action" relies on an interpretation of the term "adverse employment action" that is
inconsistent with Fifth Circuit case law. ............................................................................... 16

    C.   Defendant's argument that he could not make an accommodation for Ms. Whatley to
continue her job as a Deputy Marshal is belied by his actual practice of accommodating male
deputies. ............................................................................................................................. 19

        1.   Ms. Whatley requested that Defendant make reasonable accommodations to allow her
to perform her job as Deputy Marshal on at least three occasions. ........................................... 19

        2.   Defendant allowed at least four male deputy marshals to perform their jobs as deputy
marshals with the same accommodations that he denied Ms. Whatley ...................................... 21

        3.   Defendant has failed to meet his burden of proving that Ms. Whatley's requested
accommodations imposed an undue hardship on the Alexandria City Marshal's Office. ............. 23

    D.   Defendant's contention that he engaged Kay Whatley in an interactive process to
determine a reasonable accommodation relies on disputed material facts ................................. 24

    E.   Defendant's argument that Kay Whatley did not have a physical impairment at relevant
time periods misconstrues the timeline. ................................................................................ 26

V.    CONCLUSION .............................................................................................................. 27

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Allen v. Rapides Parish Sch. Bd.*, 204 F.3d 619, 622-23 (5th Cir. 2000) .................................... 24

*Chevron Phillips*, 570 F.3d at 621 ................................................................................................ 24

*Click v. Copeland,* 970 F.2d 106, 109 (5th Cir.1992) ................................................................... 18

*Foreman v. Babcock Wilcox Co.*, 117 F.3d 800, 810 n. 14 (5th Cir. 1997) ................................. 24

*Forsyth v. City of Dallas,* 91 F.3d 769, 774 (5th Cir. 1996) ......................................................... 18

*Gonzales*, 176 F.3d at 838 ........................................................................................................... 24

*Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 316 (5th Cir. 2007) ................................................. 23

*Kleiber v. Honda of Am. Mfg.*, 485 F.3d 862, 871 (6th Cir. 2007) ............................................... 24

*Loulseged v. Akzo Nobel* Inc., 178 F.3d 731, 735 n. 4 (5th Cir. 1999 ......................................... 24

*Sharp v. City of Houston,* 164 F.3d at 928, 933 (5th Cir. 1999) ................................................... 18

*Stokes v. Nielsen*, 751 F. App'x 451, 455 (5th Cir. 2018) ........................................................... 26

*Tobin v. Liberty Mut. Ins. Co.*, 433 F.3d 100, 108 (1st Cir. 2005) .............................................. 24

**Statutes**

29 C.F.R. § 404.1567 ..................................................................................................................... 20

§ 12111(9)(B) ................................................................................................................................ 24

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL**
**SUMMARY JUDGMENT ON MS. WHATLEY'S ADA CLAIMS (R. DOC. 24)**

In this memorandum, Plaintiff Patricia "Kay" Whatley opposes the *Motion for Partial*
*Summary Judgment* filed by Defendant Alexandria City Marshal Jerome Hopewell (R. Doc. 24).

## I.       INTRODUCTION

Defendant's Motion for Summary Judgment should be denied for at least three reasons. First,
the Motion should be denied because it relies on thirteen disputed material facts. For example, the
parties dispute whether Ms. Whatley's job responsibilities as a Deputy Marshal were within her
restriction to light duty work, and, if not, whether a reasonable accommodation was available to return
Ms. Whatley to that position. And at least one material fact is not even consistent with Defendant's
own statement: Defendant has said there both *was* and *was not* a light-duty position available.

Second, the Motion should be denied because it fails to address Fifth Circuit case law that is
on point. According to Fifth Circuit precedent in cases like *Sharp, Forsyth*, and *Click*, a reasonable
jury could conclude that Defendant's decision to transfer Ms. Whatley from a law enforcement position
to a clerical position was an adverse employment action in retaliation for Ms. Whatley making a request
for an accommodation.

And third, the Motion should be denied because Defendant asks this Court to rule on issues
that are jury questions. For example, Defendant asks this court to decide that he did not contribute to a
breakdown of the interactive process that led to his failure to accommodate Ms. Whatley.  Defendant
asks this court to make a credibility determination and determine who was to blame for the breakdown
in the interactive process of seeking accommodation – questions that are fundamentally up to the jury.

For these reasons and those detailed herein, the Motion should be denied.

## II.       FACTUAL BACKGROUND

### A.  Kay Whatley was the only woman Deputy Marshal in the Alexandria City Marshal's Office.

This is a case in which the Alexandria City Marshal's Office discriminated and retaliated
against the only woman deputy marshal in their office after she sustained an on-the-job knee injury

and subsequent re-injury.[1] Generally, Deputy Marshals work out of the office most of the time.[2] On Mondays, Wednesdays, and Fridays, they serve papers.[3] On Tuesdays and Thursdays their job responsibilities revolve around the courthouse operations.[4] As part of her employment, Ms. Whatley enrolled in the Alexandria Police Academy.[5] On Monday, January 29, 2018, while running up and down amphitheater steps as part of the police academy training, Ms. Whatley suffered a meniscus tear in her right knee.[6] Following her injury, Ms. Whatley did not miss any work and continued her regular marshal duties.[7] From the time of her injury until her surgery on September 7, 2018, the Alexandria City Marshal's Office accommodated Ms. Whatley by allowing her to work a position at the front door.[8]

The position at the front door or the front desk was considered light-duty work.[9] For example, Defendant accommodated Deputy Marshal Harry Robertson while he recovered from shoulder surgery by allowing him to work the position at the front door for two months – a position he considered light duty.[10] The position allowed Deputy Marshals to maintain their status as Deputy Marshals with similar duties, interacting with the public, but was primarily sedentary approximately 85% of the time.[11] On May 11, 2018, after winning the run-off election, Defendant Jerome Hopewell officially took office as Alexandria City Marshal.[12] On July 30, 2018, Ms. Whatley's treating orthopedic surgeon, Dr. Malcolm J. Stubbs, noted that Ms. Whatley was continuing to work her regular job which was "primarily sedentary and light duty in nature."[13]

---

[1] Exhibit A, Excerpts from Transcript of Deposition of Chief Deputy Steve Boeta, p. 21:21-23; Exhibit B, Excerpts from Transcript of Deposition of Defendant Jerome Hopewell, p. 35:16-36:2.
[2] Exhibit C, Excerpts from Transcript of Deposition of Butch Mackey, p. 57:14-15; 60:2-61:1.
[3] *Id.* at 56:23-57:13.
[4] *Id.* at p. 57:16-58:6.
[5] Exhibit, D, Excerpts from Transcript of Deposition of Plaintiff Kay Whatley, p. 36.
[6] *Id.*; Exhibit E, Excerpts of Dr. Malcolm Stubbs Certified Medical Records, M00009-11.
[7] Exhibit D (Whatley), p. 46-47.
[8] *Id.* at p. 48.
[9] Exhibit A (Boeta), p. 16:20-17:9.
[10] Exhibit F, Excerpts from Transcript of Deposition of Deputy Marshal Harry Robertson, p. 25:22-29:7.
[11] Exhibit D (Whatley), p. 72:24-73:24; Exhibit C (Mackey), p. 124:11-126:12.
[12] Exhibit B (Defendant), p. 14:5-9.
[13] Exhibit E (Stubbs), M00011.

**B.** **Defendant demoted Ms. Whatley to a clerical position after she returned from knee surgery, failed to engage Ms. Whatley in an interactive process, and placed her in a position that exacerbated her knee injury.**

On September 7, 2018, Ms. Whatley underwent surgery on her right knee.[14] On October 15, 2018, Dr. Stubbs noted that Ms. Whatley was on crutches and "I will keep her out of work for now. When she returns, she will likely be suitable for sedentary work."[15] On November 16, 2018, Dr. Stubbs noted that Ms. Whatley was "recovering well" and had graduated to using only one crutch. By that time, "[Ms. Whatley] ha[d] returned to work already in a sedentary capacity."[16] When Ms. Whatley returned to work on crutches, Defendant Hopewell initially accommodated her by allowing her to return to her position as a Deputy Marshal, primarily working the front door.[17]

After allowing Ms. Whatley to work the front door position for a period of time, Defendant then changed his mind and claimed Ms. Whatley could not work the front door position because she was on crutches.[18] Defendant moved her to a position in the office, where she had to stand and file documents – an administrative staff position.[19] Other staff were allowed to work from desks, but Ms. Whatley's position required that she stand at the front counter, which increased the pain in her knee.[20]

By December 14, 2018, Ms. Whatley was no longer on crutches, but was walking with a limp ("antalgic").[21] Dr. Stubbs administered an injection and recommended Ms. Whatley "continue her sedentary work."[22] Although Ms. Whatley was no longer on crutches, Defendant claimed she could not return to the sedentary front door position because she did not have a firearm.[23] Even though Ms. Whatley had obtained POST certification, Defendant told Ms. Whatley that she could not carry a firearm until she completed the Alexandria Police Academy training.[24]

---

[14] *Id.* at M00016. Exhibit D (Whatley), p. 56
[15] Exhibit E (Stubbs), M00018-19.
[16] *Id.* at M00021-22.
[17] Exhibit D (Whatley), p. 45-48.
[18] *Id.* at p. 49.
[19] *Id.*
[20] *Id.* at p. 53.
[21] Exhibit E (Stubbs), M00024.
[22] *Id.* at M00025.
[23] Exhibit D (Whatley), p. P. 74:1-12; 98:1-20.
[24] *Id.*

By January 7, 2019, Ms. Whatley's pain had worsened, and she reported to Dr. Stubbs that "her pain is just as bad now as it was prior to surgery."[25] On that same date, Ms. Whatley was prescribed a knee brace for her right knee.[26] At her deposition, Ms. Whatley described the comments that Defendant and his employees made ridiculing her knee brace and her limping gait.[27]

On January 17, 2019, Ms. Whatley met with Defendant and his Chief Deputy, Steve Boeta, to address the increasing hostility she was facing in the office.[28] Kay brought former Deputy Marshal Butch Mackey as a witness to this meeting.[29] Defendant ignored Ms. Whatley's concerns about workplace harassment, told her he had spoken with her attorney, and gave her no option except telling her to take a Workers' Compensation leave of absence.[30] Defendant claimed there were no sedentary positions available for Ms. Whatley.[31]

On March 11, 2019, Dr. Stubbs noted that, "[a]t this time releasing her back to her regular job[,]" but cautioned that she would not be considered "completely released" until the next month when she would be at Maximum Medical Improvement (MMI).[32] When Ms. Whatley returned to work, the sexual harassment and disability-based harassment continued. In the presence of supervisors Chief Deputy Steve Boeta and Office Manager Rhonda Segura, Deputy Marshals Pruitt and Robertson threatened to tase Ms. Whatley on her knee.[33] At her deposition, Ms. Whatley testified that Deputy Marshals Pruitt and Robertson would pull the tasers out and charge them while making these threats:

> A:     They also said about well, let's just – let's Tase you again on the knee and see if that works better than the first time. You know, just little comments like that.
>
> Q:     Who said that?
>
> A:     Harry and Chris.
>
> Q:     They said they were going to Tase you on the knee?

---

[25] Exhibit E (Stubbs), M00027.
[26] *Id.* at M00028.
[27] Exhibit D (Whatley), p. 111:7-112:22; Exhibit F (Robertson), p. 65:17-69:17.
[28] Exhibit D (Whatley), p. 139:22-141:12. Exhibit C (Mackey), p. 72:2-73:9.
[29] Exhibit D (Whatley), p. 139:11-21.
[30] *Id.* at p. 139:22-141:12. Exhibit C (Mackey), p. 72:2-73:9.
[31] Exhibit G, Excerpts from Defendant's Initial Disclosures, 00291
[32] Exhibit E (Stubbs), M00035.
[33] Exhibit D (Whatley), p. 125:13-127:16.

A:     "Let's Tase you on the knee and see if that helps and gets your blood to flowing again."[34]

…

Q:     But when Pruitt and Robertson would do the clicking sound, was that directed at you?

A:     Oh, yeah. They would say "Come over here." They said it several times after I had my knee surgery. They would say let's charge – "Let's see if it works on your knee like it did on your butt that time." Or they would just take it out and charge it as you would walk by.[35]

### C.  After Ms. Whatley's reinjury, Defendant failed to engage her in an interactive process, falsely claimed no sedentary or light duty positions were available, delayed her return to work for over two months, and demoted her when she returned.

On May 1, 2019, Kay's POST-certification expired.[36] Defendant told all deputy marshals in the Alexandria City Marshal's Office that if they did not complete training at the Alexandria Police Academy and get POST-certified then they would lose their jobs.[37] At the time, Ms. Whatley, Deputy Marshal Reno Nepa, and Deputy Marshal Mike Norwood were not POST-certified.[38]

Prior to Ms. Whatley's enrollment in the Alexandria Police Academy in 2019, Defendant was considering making an accommodation for Office Manager Rhonda Segura and Deputy Marshal Mike Norwood, and allowing them to attend the less physically rigorous Corrections Academy.[39]

On July 3, 2020, to keep her job as a Deputy Marshal, Ms. Whatley enrolled in the Alexandria Police Academy.[40] Ms. Whatley's first week of training began on July 29, 2019.[41] On Monday, August 19, 2019, the first day of the fourth week of training, Ms. Whatley felt something tear in her knee while doing burpees, an exercise where you fall down into a push-up position, do a push-up, jump back up and repeat.[42]

That evening, Ms. Whatley texted her supervisor Chief Deputy Steve Boeta to ask for clarification on the Alexandria City Marshal's Office's physical requirements and to ask if an

---

[34] *Id.* at p. 93:7-18.
[35] Exhibit D (Whatley), p. 126:12-20.
[36] Exhibit H, POST-Certification Card issued to Plaintiff Kay Whatley.
[37] Exhibit D (Whatley), p. 57:2-59:15.
[38] *Id.* at p. 57:15-17.
[39] *Id.* at p. 37:25-42:20.
[40] *Id.* at p. 37:1-7.
[41] Exhibit G (Def's Discl.), 00301.
[42] Exhibit D (Whatley), p. 56:16-60:14.

accommodation could be made for her to complete the training in her "present condition."[43] Chief Deputy Boeta responded, "We are going to let APD decide."[44]

Alexandria Police Dept. Sgt. Bradley suggested that Ms. Whatley could complete her training at the less physically demanding Corrections Academy.[45] However, when APD contacted Defendant on Ms. Whatley's behalf to make this request, Defendant told them he could not make this accommodation for Ms. Whatley.[46]

Ms. Whatley returned to work a day or two after reinjuring her knee.[47] When she returned, Defendant discussed her job responsibilities with her and told her she would be limited to working in the office.[48]

On October 3, 2019, Dr. Stubbs recommended that Ms. Whatley "would currently be fit for sedentary to light duty at the present time, if available."[49] On October 31, 2019, Ms. Whatley reported to Dr. Stubbs that she was still out of work because Defendant had represented to her that "there is no sedentary or light duty available."[50] Dr. Stubbs again noted that "[p]hysically [Ms. Whatley] would be capable of that," but she "continues with a no work status" because Defendant claimed he could not make an accommodation.[51]

After Dr. Stubbs cleared Ms. Whatley for "sedentary to light duty" work on October 3, 2019, Ms. Whatley attempted to engage Defendant in an interactive process to discuss possible accommodations without involving attorneys.[52] Defendant refused to speak with Ms. Whatley.[53]

In fact, Defendant did not even purport to engage Ms. Whatley in an interactive process until over a month later on November 12, 2019, when he finally responded to the November 6, 2019,

---

[43] Exhibit I, Text Messages from Plaintiff Kay Whatley to Chief Deputy Steve Boeta on August 19, 2019.
[44] *Id.*
[45] Exhibit D (Whatley), p. 58:8-24.
[46] *Id.* at p. 58:25-59:15.
[47] Exhibit D (Whatley), p. 60:7-14.
[48] *Id.* at 60:7-14; p. 61:10-22.
[49] Exhibit E (Stubbs), M00043.
[50] *Id.* at M00046.
[51] *Id.*
[52] Exhibit D (Whatley), p. 83:4-84:25.
[53] *Id.* at 83:4-84:3.

correspondence from Ms. Whatley's attorney requesting specific accommodations and an interactive process.[54]

Defendant responded that Ms. Whatley could "retain [the] title" of Deputy Marshal when she returned to work.[55] Defendant failed to provide a full explanation for why he could not accommodate Ms. Whatley's return to the position of Deputy Marshal.[56] Next, after previously failing to accommodate Ms. Whatley after her surgery by placing her in a position where she had to stand for longer periods of time, *and after over a month of claiming there were no sedentary or light duty positions available*, Defendant claimed he could "certainly accommodate the restrictions outlined in [counsel's] letter [.]"[57]

On Wednesday, November 13, 2019, counsel requested that Defendant clarify his response and fully explain his refusal to accommodate Ms. Whatley's request to return to her "actual work assignment and job duties" as a Deputy Marshal.[58] Counsel noted that the office duties Defendant had previously assigned Ms. Whatley were "not typical of a deputy marshal" – they were a demotion and unlike the accommodations Defendant allowed male deputies.[59] Further, counsel noted that the office duties Defendant had previously assigned Ms. Whatley were "[not] appropriate considering her knee injury," as that position had caused her greater pain after her surgery.[60] Counsel specifically asked Defendant to "explain how, in particular, you plan to accommodate Ms. Whatley[.]."[61]

When Defendant responded on that same date, he did not explain why he was refusing to return Ms. Whatley to her requested accommodation – to be accommodated as a Deputy Marshal in the same manner that male deputies were accommodated.[62] Defendant did not explain how he planned to accommodate Ms. Whatley.[63] Eight days later, on Thursday, November 21, 2019, after having received

---

[54] R. Doc. 24-5, p. 2.
[55] R. Doc. 24-5, p. 2.
[56] *See* R. Doc. 24-5, p. 2.
[57] R. Doc. 24-5, p. 2.
[58] R. Doc. 24-5, p. 11.
[59] R. Doc. 24-5, p. 11.
[60] R. Doc. 24-5, p. 11.
[61] R. Doc. 24-5, p. 11.
[62] *See* R. Doc. 24-5, p. 10.
[63] *See* R. Doc. 24-5, p. 10.

no response from Defendant, counsel provided Defendant with the latest medical report, as requested.[64] Again, counsel requested that Defendant engage in the interactive process and explain what accommodations were available.[65] On Monday, November 25, 2019, after 12 days with no response from Defendant, counsel sent yet another follow-up email.[66] On November 27, 2019, two weeks since Defendant's last response, Ms. Whatley's counsel again requested that Defendant return Ms. Whatley to work in her position as a Deputy Marshal and explain how he planned to accommodate Ms. Whatley's injury.[67]

On December 1, 2019, Defendant finally responded, but only to say that he was "under the impression" that "[workers' compensation adjusters] were in touch with you."[68] On December 2, 2019, Ms. Whatley's counsel informed Defendant that workers' compensation adjusters do not handle workplace accommodation – this is Defendant's responsibility as Ms. Whatley's employer.[69] Counsel suggested that Defendant call him to explain the continued failure to accommodate Ms. Whatley.[70]

On December 4, 2019, Defendant sent a wholly non-responsive reply: "It is my understanding that she had an apt. on 11-12-19."[71] Defendant also requested a "second medical opinion."[72] Counsel informed Defendant that nothing had changed regarding Ms. Whatley's medical status.[73] Despite having been given a copy of the latest medical report two weeks earlier and having a line of communication with the workers' compensation adjuster, Defendant sent Counsel another email demanding "something from medical professional outlining her limitations."[74] Counsel reminded Defendant that Dr. Stubbs has already provided limitations.[75]  At this point in the email exchange, Defendant then copied and pasted the list of requested accommodations from Counsel's November 6,

---

[64] R. Doc. 24-5, p. 9-10.
[65] R. Doc. 24-5, p. 9-10.
[66] R. Doc. 24-5, p. 9.
[67] R. Doc. 24-5, p. 3-4.
[68] R. Doc. 24-5, p. 3.
[69] R. Doc. 24-5, p. 3.
[70] R. Doc. 24-5, p. 3.
[71] R. Doc. 24-5, p. 12.
[72] R. Doc. 24-5, p. 9.
[73] R. Doc. 24-5, p. 12.
[74] R. Doc. 24-5, p. 12.
[75] R. Doc. 24-5, p. 12, 20.

2019 letter – a letter he received nearly a full month earlier – and asks "who wrote this[.]"[76] Counsel responded, "[t]hat is a list of requested accommodations created by Ms. Whatley and her legal counsel based on the recommendations of her doctor."[77] Counsel also pointed out that Defendant "backtracked" when "pressed for clarification" and "ha[d] yet to identify any issues with the requested accommodations."[78] Nearly a full month since counsel first contacted Defendant, Defendant still "refused to articulate what [he] need[s] to see for Ms. Whatley to be able to return to work."[79]

On December 5, 2019, Defendant purported to be acting "out of an abundance of caution."[80] Counsel advised Defendant that Ms. Whatley went to the doctor's office that very day and was told her only limitation is "modified duty."[81] Counsel again stated that Ms. Whatley's requested accommodation "is to return to her original position in the field as deputy marshal performing the same duties she did prior to being moved into the office."[82] With no further explanation of what accommodation he would make for Ms. Whatley, Defendant responded that he "will certainly be able to accommodate Ms. Whatley's restrictions."[83] However, Defendant added that Ms. Whatley "will have to be confined to the office upon her return[.]"[84]

D. **When Ms. Whatley returned to work, Defendant demoted her, failed to provide her with a reasonable accommodation, and retaliated when she requested a reasonable accommodation, and stated that she would enforce her rights through the legal process.**

On December 9, 2019, when Ms. Whatley returned to work, Defendant immediately demoted her to the same clerical staff position he had transferred her to after surgery, where she had to stand and had nowhere to sit.[85] Instead of being supervised by Chief Deputy Boeta, the supervisor for Deputy Marshals, she was supervised by Office Manager Rhonda Segura.[86] Ms. Segura made it known to other

---

[76] R. Doc. 24-5, p. 19.
[77] R. Doc. 24-5, p. 19.
[78] R. Doc. 24-5, p. 19.
[79] R. Doc. 24-5, p. 19.
[80] R. Doc. 24-5, p. 18.
[81] R. Doc. 24-5, p. 17-18.
[82] R. Doc. 24-5, p. 18.
[83] R. Doc. 24-5, p. 17.
[84] R. Doc. 24-5, p. 17.
[85] Exhibit D (Whatley), p. 85:1-86:25.
[86] *Id.* at p. 35.

employees that Defendant did not want Ms. Whatley in their employment anymore.[87] Employees were instructed not to speak to Ms. Whatley because Defendant wanted to get rid of her.[88] During this time, Defendant hired a new elderly male Deputy Marshal to work the position at the front desk that Ms. Whatley had requested as an accommodation.[89]

When Ms. Whatley complained that the clerical position was not an accommodation and, in fact, exacerbated her symptoms, Defendant confined her to a separate office, isolated her from other employees, assigned her the tedious task of scanning files with no other job responsibility, required her to report on her programs each day, told her not to leave except to use the bathroom, and installed a security camera pointed directly at her.[90] While confined to this office, Ms. Whatley was subject to routine sexual harassment.[91]

On Friday, January 10, 2020, Ms. Whatley met with Chief Deputy Steve Boeta to complain that she felt she was being retaliated against for being injured.[92] Ms. Whatley asked Chief Deputy Boeta to explain how he and Defendant would address these issues.[93] Chief Deputy Boeta did not offer any suggestions.[94] At this meeting, Ms. Whatley informed Chief Deputy Boeta that she  intended to file an EEOC Complaint.[95] In response to Ms. Whatley's complaint, Chief Deputy Boeta simply told Ms. Whatley that she was doing what she was supposed to do.[96]

On Monday, January 13, 2020, Ms. Whatley's EEOC Charge was filed.[97]     Defendant Hopewell, his Chief Deputy Steve Boeta, and Office Manager Rhonda Segura retaliated against Ms. Whatley by giving her a write-up for "disrupting" the office because of the threat to sue implicit in an EEOC charge. *See* Fig. 1, below.

---

[87] Exhibit J, Excerpts from Transcript of Deposition of Jaqueline McCoy, p. 34:10-19.
[88] *Id.* at p. 77:10-78:17.
[89] Exhibit D (Whatley), p. 78:6-14.
[90] *Id.* at p. 66:16-25, 117:13-119:12 Exhibit A (Boeta), p 51:8-19.
[91] Exhibit K, EEOC Charge of Discrimination, p. 31-34 (Comment Log)
[92] Exhibit D (Whatley), p.133:3-135:7.
[93] *Id.*
[94] *Id.*
[95] *Id.*
[96] *Id.*
[97] Exhibit K.

**Figure 1**:      On the <u>same day</u> as the filing of her EEOC complaint, Defendant gave Ms. Whatley a written disciplinary warning because she "threatened to sue" the City Marshal's Office.



Prior to this, Ms. Whatley had never been given an evaluation or been written up.[98] Ms. Whatley is the only employee who Defendant has ever given a written warning.[99]

The harassment and retaliation had become so severe by this point as to constitute a constructive termination of Ms. Whatley.[100] On February 4, 2020, Ms. Whatley submitted her resignation letter effective immediately, "due to the stress of being subject to a hostile work environment consisting of sexual harassment, discrimination and retaliation for exercising [her] rights after filing a complaint with the EEOC."[101]

---

[98] Exhibit B (Defendant), p. 118:17-119:3.
[99] *Id.*
[100] Exhibit D (Whatley), p. 147:9-15.
[101] Exhibit K, p. 29 (Resignation Letter).

### III.    LEGAL STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[102] "An issue is material if its resolution could affect the outcome of the action."[103] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[104] All reasonable inferences are drawn in favor of the non-moving party.[105]

### IV.    DISCUSSION

**A.  <u>Defendant's Motion should be denied because it relies on thirteen disputed material facts.</u>**

Defendant's motion relies on thirteen material facts that are disputed.[106] The parties dispute whether Ms. Whatley's job responsibilities as a Deputy Marshal were within her restriction to light duty work, and, if not, whether a reasonable accommodation was available to return Ms. Whatley to that position.[107] With regard to whether accommodations were available, Defendant's own statements are not even internally consistent. After an MRI, when Ms. Whatley was released to return to light-duty work, Defendant represented to Ms. Whatley and the workers' compensation adjuster that there were no available sedentary or light duty positions available – forcing Ms. Whatley to remain on workers' compensation leave.[108] However, approximately one month later, Defendant represented to Ms. Whatley's counsel that there *were* sedentary or light-duty positions available.[109] Defendant provided no explanation for this inconsistency.

Because of the number and centrality of the thirteen disputed material facts, summary judgment should be denied.

---

[102] Fed. R. Civ. P. 56; *see also, Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).
[103] *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[104] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co*., 530 F.3d 395, 398-99 (5th Cir. 2008).
[105] *Little v. Liquid Air. Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994).
[106] PLAINTIFF'S RESPONSE TO DEFENDANT'S PROPOSED STATEMENT OF MATERIAL FACTS (R. DOC. 24-6).
[107] *Id.,* para. 30, 32.
[108] Exhibit E (Stubbs), M00046; R. Doc. 24-5, p. 10.
[109] R. Doc. 24-5, p. 2.

**B.  Defendant's argument that he did not subject Kay Whatley to an "adverse employment action" relies on an interpretation of the term "adverse employment action" that is inconsistent with Fifth Circuit case law.**

Defendant's motion should be denied because Fifth Circuit caselaw shows that a reasonable jury could conclude that  Defendant's unilateral decision to reassign Ms. Whatley to an administrative staff position in the office was a retaliatory adverse employment action.

A claim for unlawful retaliation under the ADA requires a showing that (1) the plaintiff engaged in an activity protected by the ADA, (2) she suffered an adverse employment action, and (3) there is a causal connection between the protected act and the adverse action.[110]

A job transfer that includes a shift change that involves changes in duties or compensation or can be objectively characterized as a demotion may be an "adverse employment action" under the ADA's anti-discrimination provision.[111] Per Fifth Circuit case law interpreting the term "adverse employment action" under other statutes to which the McDonnell Douglas framework applies, a job transfer may qualify as an "adverse employment action" if the change makes the job "objectively worse."[112]

Defendant's argument in support of summary judgment on the issue of unlawful retaliation neglects to address a key material fact – that he twice reassigned Kay Whatley to an administrative position in the office (with the other women employees). On the first occasion, after Ms. Whatley returned from her September 2019 surgery, she was comfortable returning to her position as a Deputy Marshal with an accommodation that allowed her to spend more time in a sedentary position at the front door. Ms. Whatley did not request any further accommodation or job reassignment. Yet, without engaging Ms. Whatley in any meaningful interactive process about her physical impairment, Defendant unilaterally decided to move Ms. Whatley to an administrative position in the office.

---

[110] *Mora v. Univ. of Texas Southwestern Med. Ctr.*, No. 11-10279 at *5 (5th Cir. 2012) (per curiam).
[111] *See Rizzo v. Children's World Learning Ctrs., Inc*., 173 F.3d 254, 260 (5th Cir. 1999) (finding that jury could find adverse employment action where plaintiff's duties were exchanged with another employee, and plaintiff's hours were reduced, forcing her to work a split shift in which she still did not work enough hours to qualify for benefits), aff'd en banc, 213 F.3d 209 (5th Cir. 2000).
[112] *See Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir. 1999); *Forsyth v. City of Dallas*, 91 F.3d 769, 774 (5th Cir. 1996); *Click v. Copeland*, 970 F.2d 106, 109 (5th Cir. 1992).

When Ms. Whatley asked Defendant to explain why she could not remain at the front door position, he told her it was because she was on crutches. When Ms. Whatley's condition improved enough that she was no longer on crutches and wore only a knee brace, Defendant claimed she could not return to the front door position because she did not have a firearm.[113] Even though Ms. Whatley had obtained POST certification, Defendant told her that she could not carry a firearm until she completed the Alexandria Police Academy training.[114]

In the clerical position, Ms. Whatley was forced to spend more time standing and lifting files. As this position was less sedentary and more physically demanding than the front door position, it exacerbated the pain in Ms. Whatley's knee. Additionally, other women office workers expressed hostility and jealousy towards Kay because she was still allowed some of the privileges of a Deputy Marshal and because she was allowed to leave to go to medical appointments for treatment of her knee injury.[115] When Kay attempted to report these issues to Defendant, he told her the only option was for her to take workers' compensation leave.

On the second occasion, after Kay retained counsel to secure her return to work, Defendant represented to Ms. Whatley's counsel that he would provide Kay with certain accommodations. On December 9, 2019, when Ms. Whatley returned to work, Defendant assigned her to the same position as described above. When Ms. Whatley and her counsel complained, Defendant "confined" her to an office, where she was isolated and denied regular human interaction, tasked with scanning files, instructed to limit her movements within the office, and Defendant put up a camera pointed directly at her.[116]

Defendant neglects to mention any of these facts in his memorandum, and similarly fails to mention well-established Fifth Circuit case law interpreting "adverse employment actions" in the

---

[113] Exhibit D (Whatley), p. 74:1-12; 98:1-20.
[114] *Id.*
[115] *Id.* at p. 139:22-141:12. Exhibit C (Mackey), p. 72:2-73:9.
[116] *Id.* at p. 66:16-25, 117:13-119:12; Exhibit A (Boeta), p 51:8-19.

context of retaliation claims made by law enforcement officers analogous[117] to Ms. Whatley's: In *Sharp v. City of Houston,* 164 F.3d at 928, 933 (5th Cir. 1999), the Fifth Circuit held that the jury was entitled to find that transferring a police officer from the "elite" mounted patrol division to a teaching position at the academy was an adverse employment action. Although the transfer did not involve a decrease in pay, title, or grade, it could be viewed, objectively, as a demotion because the academy position was "less prestigious" than the position in the "elite" mounted patrol division.

In *Forsyth v. City of Dallas,* 91 F.3d 769, 774 (5th Cir. 1996) the Fifth Circuit concluded that transferring police officers from positions in the intelligence unit to night patrol positions, with different duties involving less interesting work, less responsibility, and less prestige, as well as less favorable working hours, was an "adverse employment action" in light of evidence that the department had transferred officers to night patrol in the past as a form of discipline.

In *Click v. Copeland,* 970 F.2d 106, 109 (5th Cir.1992), the Fifth Circuit held that the transfers of two deputy sheriffs from the law enforcement division to positions as jail guards could be considered demotions, even though the transfers were not accompanied by reductions in salary, because there was evidence that: (1) the jail guard positions were less interesting and less prestigious than the law enforcement positions; (2) "everybody" viewed a transfer from detention to law enforcement as a promotion and such transfers were rarely appealed, unlike transfers from law enforcement to detention, which few people requested and which were often appealed; and (3) there was a general preference for law enforcement positions, as "all" jail guards would like to be doing law enforcement work.

Given this precedent, a reasonable jury could conclude here that Defendant's choice to respond to a POST-certified officer's requests for accommodation with a transfer to laborious, secretarial work was retaliatory.

---

[117] It is the opinion of the Louisiana Attorney General that, "[a] City Marshal has the same powers and authority as a Sheriff to enforce the laws and ordinance of the state, parish, and city, within his jurisdiction including the general power to make arrests and preserve the peace." Opinion 22-0015, issued May 13, 2022.

**C.  Defendant's argument that he could not make an accommodation for Ms. Whatley to continue her job as a Deputy Marshal is belied by his actual practice of accommodating male deputies.**

Defendant argues that he could not accommodate Ms. Whatley's requests to: (1) return to her position as a Deputy Marshal, and (2) attend the less physically rigorous Corrections Academy. The facts suggest otherwise, and in any case, Defendant's own memorandum suggests that this is a case of "would not accommodate" rather than "could not accommodate."

**1.  Ms. Whatley requested that Defendant make reasonable accommodations to allow her to perform her job as Deputy Marshal on at least three occasions.**

The ADA defines "reasonable accommodation" to explicitly include "job restructuring" and "appropriate adjustment or modifications of examinations, training materials or policies."[118] Ms. Whatley has identified three occasions where she requested that Defendant make reasonable accommodations to allow her to continue her job as a Deputy Marshal:

First, as described in the previous section, when Ms. Whatley returned to work after knee surgery, Defendant initially made a reasonable accommodation to Ms. Whatley's job to allow her to continue in her job as Deputy Marshal with the modification or adjustment of her job responsibilities to allow her to spend more time working the sedentary front door position  – an accommodation that Defendant has made for at least four male Deputy Marshals. After Defendant inexplicably and unlawfully pulled Ms. Whatley from that position and demoted her to an administrative staff position, Ms. Whatley made a reasonable request to return to her original Deputy Marshal position with the same accommodation made for male deputies. In response, Defendant told her she had no option but to take workers' compensation leave.

Second, Ms. Whatley concedes that she has no "failure-to-accommodate" claim for the time when she enrolled in the Alexandria Police Academy in July 2019. She does, however, have a failure-to-accommodate claim for Defendant's failure to accommodate her return to work after her re-injury

---

[118] 42 U.S.C. 12111(9); 29 C.F.R. § 1630.2(o)(2);

on August 19, 2019. Immediately following her injury, Ms. Whatley requested an adjustment or modification to the physical fitness portion of the examination and Defendant's policy to allow her to complete the required training. That evening, Ms. Whatley texted her supervisor Chief Deputy Steve Boeta to ask if Defendant would modify his policy on the "physical requirements" for her to complete her assessment at the Alexandria Police Academy. Chief Deputy Boeta responded, "we are going to let APD decide" – Defendant would not make the requested reasonable accommodation, punted to an outside agency, and offered no alternative accommodation. When Ms. Whatley consulted with Sgt. Bradley of the Alexandria Police Department regarding her options, he suggested that she could complete training at the less physically rigorous Corrections Academy. Defendant again denied this reasonable accommodation request and offered no alternative reasonable accommodation.

Third, after Dr. Stubbs cleared Ms. Whatley to return to "sedentary **or light duty**" work on October 3, 2019, Ms. Whatley requested to return to her position as a Deputy Marshal. In Ms. Whatley's experience as a Deputy Marshal, "light work" meant she could comfortably return to her position as a Deputy Marshal.[119]  However, Defendant claimed there was "no sedentary or light duty available," which forced Ms. Whatley to continue with a no-work status. Not only did Defendant refuse to engage in any meaningful dialogue with Ms. Whatley during this time, but he refused to respond to her for over a month until she finally retained an attorney to help her get her job back. Defendant then admitted there <u>was</u> sedentary or light duty work available, but continued to obstruct Ms. Whatley's return to work for another month. When Defendant finally allowed Ms. Whatley to return to work he failed to accommodate her in her position as Deputy Marshal, and chose instead to demote her by transferring her to an administrative staff position in the office – the same position he placed her in after her surgery where she was forced to stand for long periods of time and lift files.

---

[119] *See* 29 C.F.R. § 404.1567 ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.")

**2.  Defendant allowed at least four male deputy marshals to perform their jobs as deputy marshals with the same accommodations that he denied Ms. Whatley.**

Defendant's claim that no reasonable accommodation could be made for Ms. Whatley in her position as Deputy Marshal, such that she had to be transferred to an administrative staff position in the office is belied by Defendant's actual practice: Defendant accommodated at least five male deputy marshals in their jobs as deputy marshals with the same job restructuring and modification of Defendant's policies that Ms. Whatley requested.

Defendant accommodated the octogenarian[120] Deputy Marshal Reno Nepa by restructuring the Deputy Marshal position to accommodate him and through modifications of Defendant's own policies to exempt him from the requirement that all deputy marshals be POST-certified, complete training at the Alexandria Police Department's Police Academy, and carry a firearm to work the front door position. Defendant and Chief Deputy Steve Boeta told Ms. Whatley that Deputy Marshal Nepa did not have to be POST-certified or go to the Alexandria Police Academy for required training because he was "too old."[121] Defendant did not require Deputy Marshal Nepa to carry a firearm to be allowed to sit at the front door position.[122] Deputy Marshal Nepa was unable to perform certain functions of the front door position.[123] For example, he had issues with his sight, hearing, and ability to walk such that people were able to walk past him and assault other employees, throwing water at the window.[124] But unlike Ms. Whatley, Nepa was allowed to continue in that role. Defendant accommodated Deputy Marshal Mike Norwood by modifying policy to exempt Deputy Marshal Norwood from having to obtain POST-certification or complete training at either the Alexandria Police Academy or the Corrections Academy. While Ms. Whatley was in the Alexandria Police Academy the second time, Defendant gave Deputy Marshal Mike Norwood the option to attend the less rigorous Corrections Academy.[125] Defendant told Ms. Whatley that Deputy Marshal Norwood was being allowed this

---

[120] Exhibit C (Mackey), p. 68:6-9.
[121] Exhibit D (Whatley), p. 39:1-8.
[122] *Id.* at p. 75:9-27.
[123] *Id.* at 75:17-21.
[124] *Id.*
[125] *Id.* at p. 40:12-25.

accommodation because he was older, had been there longer, and had paid his dues.[126] Defendant accommodated Deputy Marshal Norwood by modifying policy to allow Deputy Marshal Norwood to keep his job without being POST-certified or requiring him to complete training at any academy.[127] Despite the fact that he never completed basic training and POST-certification at either the Alexandria Police Academy or Corrections Academy, Defendant allowed Deputy Marshal Norwood to keep and carry an Alexandria City Marshal's Office issued firearm – unlike Ms. Whatley.[128]

After Defendant denied Ms. Whatley's request to return to her prior job as a Deputy Marshal and demoted her to an administrative staff position, Defendant hired an elderly man identified as Olin Cowlin as a Deputy Marshal.[129] Deputy Marshal Cowlin had two knee replacements and difficulty walking.[130] Defendant accommodated Mr. Cowlin in the Deputy Marshal position by allowing him to work the front door position and placing a chair out for him in the front along the area where purses are scanned.[131] On Mr. Cowlin's first day of employment in December 2019, an ambulance had to be called to get Deputy Marshal Cowlin out of the car.[132] Even after this incident, Defendant continued to allow Deputy Marshal Cowlin to work the position in the front and serve papers.[133] Defendant further accommodated Deputy Marshal Cowlin by allowing him to use Deputy Robertson's truck that was easier to get into to serve papers in the field.[134]

While Deputy Marshal Harry Robertson recovered from shoulder surgery, Defendant accommodated him by allowing him to work the position at the front door for two months – a position he considered light duty.[135] During those two months, Defendant allowed Deputy Marshal Robertson to keep his government-issued car.[136] During his deposition Deputy Marshal Robertson recalled that

---

[126] *Id.* at p. 41:5-6.
[127] Exhibit L, Excerpts from Transcript of Deposition of Deputy Marshal Mike Norwood, p. 16:24-17:7.
[128] *Id.* at p. 15:25-16:11.
[129] Exhibit K, EEOC Charge of Discrimination, p. 30-34 (Comment Log); Exhibit D (Whatley), p. 78:6-12; Exhibit F (Robertson), p. 33:6-36:4.
[130] Exhibit D (Whatley), 78:10-12.
[131] Exhibit D (Whatley), p. 78:12-14; Exhibit F (Robertson), p. 33:6-36:4.
[132] Exhibit D (Whatley), p. 78:25-79:2; Exhibit F (Robertson), p. 33:6-36:4.
[133] Exhibit D (Whatley), p. 79:6-12; Exhibit F (Robertson), p. 33:6-36:4.
[134] Exhibit, EEOC Commen Log; Kay, p. 78:14-20. Robertson, p. 45:24-46:2.
[135] Exhibit F (Robertson), p. 25:22-29:7.
[136] *Id.* at p. 29:1-4.

Deputy Marshal Chris Pruitt has also since worked the front door position for a little while as he recovered from knee surgery.[137]

Defendant made reasonable accommodations for every male Deputy Marshal with a physical impairment by allowing them to return to their positions as Deputy Marshals – not transferring them to an administrative staff position – and by providing them the exact accommodations Ms. Whatley requested. A reasonable jury could therefore conclude that the accommodations Ms. Whatley requested were reasonable and available on an as-needed basis.

**3. Defendant has failed to meet his burden of proving that Ms. Whatley's requested accommodations imposed an undue hardship on the Alexandria City Marshal's Office.**

Discrimination under the ADA includes failing to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, **unless** such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity."[138]

As discussed above, Ms. Whatley submitted sufficient evidence to prove that the accommodations she requested were reasonable and available. It is Defendant's burden to prove that Ms. Whatley's requested accommodations imposed an undue hardship on the Alexandria City Marshal's Office – undue hardship is a classic question for the jury to decide. Defendant's motion should be denied because he does not even contend that Ms. Whatley's requested accommodations imposed an undue hardship on the Alexandria City Marshal's Office. Rather, he argues at length that he has no obligation to provide Ms. Whatley with her "preferred accommodation."[139] Defendant provides quotations from the case law without context to suggest that disabled employees have no right to choose their job assignment.[140] This is contrary to the court's holding, the full quote from *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 316 (5th Cir. 2007) is as follows:

---

[137] *Id.* at p. 28:6-29:7.
[138] R. Doc. 24-1 (citing 42 U.S.C. § 12112(b)(5)(A)), p. 8.
[139] R. Doc. 24-1, p. 11-12.
[140] R. Doc. 24-1, p. 12.

It is the plaintiff's burden to request reasonable accommodations. *Loulseged v. Akzo Nobel* Inc., 178 F.3d 731, 735 n. 4 (5th Cir. 1999. **When no reasonable accommodation can be made to the plaintiff's prior job, he may be transferred to another position.** § 12111(9)(B); *Gonzales*, 176 F.3d at 838. The plaintiff bears the burden of proving that an available position exists that he was qualified for and could, with reasonable accommodations, perform. *Foreman v. Babcock Wilcox Co.*, 117 F.3d 800, 810 n. 14 (5th Cir. 1997). A disabled employee has no right to a promotion, to choose what job to which he will be assigned, or to receive the same compensation as he received previously. *Allen v. Rapides Parish Sch. Bd.*, 204 F.3d 619, 622-23 (5th Cir. 2000).

According to the full quote, an employer cannot transfer a disabled employee to another position when reasonable accommodations can be made to the plaintiff's prior job. Ms. Whatley has demonstrated reasonable accommodations can be made to her prior job as a Deputy Marshal, and were, in fact, made for at least four male Deputy Marshals. Defendant has provided no explanation for how the requested accommodations posed an undue hardship solely in Ms. Whatley's case, but not in the case of every male Deputy Marshal with a physical impairment. Ms. Whatley was entitled to a reasonable accommodation and Defendant had an obligation to make one for her. Instead, he chose to force her into the position he personally preferred for her – administrative staff confined to the office with the other ladies.

### D. Defendant's contention that he engaged Kay Whatley in an interactive process to determine a reasonable accommodation relies on disputed material facts

The ADA imposes a requirement on employers to engage in an "interactive process" to identify an appropriate accommodation for an employee. Once an employee requests and suggests an accommodation for a disability, an employer is required to engage in "'a meaningful dialogue with the employee to find the best means of accommodating that disability.' The process thus requires 'communication and good-faith exploration.'" *Chevron Phillips*, 570 F.3d at 621 (quoting *Tobin v. Liberty Mut. Ins. Co.*, 433 F.3d 100, 108 (1st Cir. 2005), and *Kleiber v. Honda of Am. Mfg.*, 485 F.3d 862, 871 (6th Cir. 2007)) (cleaned up).

This process requires more than a broad, cursory review, as employers must have a "meaningful dialogue with the employee to find the best means of accommodating that disability" that

takes into account that employee's unique circumstance.[141] "Under the ADA, once the employee presents a request for an accommodation, the employer is required to engage in the interactive process so that *together* they can determine what reasonable accommodations might be available."[142] And the failure to engage in interactive process is "an independent violation of the ADA" if "the plaintiff establishes a prima facie showing that he proposed a reasonable accommodation."[143]

In this case, Defendant's repeated failure to engage Ms. Whatley in an interactive process led to his failure to accommodate her on at least four occasions. First, Defendant did not have any meaningful dialogue with Ms. Whatley after her surgery when he made the unilateral decision to pull her from the Deputy Marshal position at the front desk, where she was accommodated, and demoted her to a clerical staff position that exacerbated her injury. Second, Defendant then offered Ms. Whatley no alternative but to take workers' compensation leave – a reasonable jury could conclude this was in retaliation for Ms. Whatley complaining of the ongoing harassment. Third, after Ms. Whatley's re-injury, at no point did Defendant make any attempt to contact Ms. Whatley to respond to her request to complete the mandatory training with an accommodation. Fourth, Defendant then falsely claimed there were no accommodations available, forced Ms. Whatley to retain undersigned counsel to secure her return to work, stalled conversations with counsel to delay Ms. Whatley's return to work, and ultimately forced Ms. Whatley to remain on workers' compensation leave for over two months. Whether Defendant engaged in a good-faith exploration of possible accommodations for Ms. Whatley are questions of fact, and credibility determinations, for the jury to decide.

---

[141] *EEOC v. Chevron Phillips Chem. Co., LP,* 570 F.3d 606, 621 (5th Cir. 2009).

[142] *Id*. at 622 (emphasis in original). *See also, e.g., Credeur v. St. Charles Gaming Co., LLC,* No. 16-CV-566, 2018 WL 1024135, at *4 (W.D. La. Jan. 18, 2018), report and recommendation adopted, No. 2:16-CV-566, 2018 WL 1023925 (W.D. La. Feb. 22, 2018) ("'When a qualified individual with a disability requests a reasonable accommodation, the employer and employee should engage in flexible, interactive discussions to determine the appropriate accommodation.' *Equal Emp't Opportunity Comm'n v. Agro Distrib., LLC,* 555 F.3d 462, 471 (5th Cir. 2009). 'The need for bilateral discussion arises because each party holds information the other does not have or cannot easily obtain." *Loulseged v. Akzo Nobel Inc.,* 178 F.3d 731, 736 (5th Cir. 1999) (internal quotations and citation omitted) (emphasis in original). An employer violates the ADA if it is unwilling to engage in a good faith interactive process which leads to a failure to reasonably accommodate an employee. *Id.*").

[143] *Hacker v. Cain,* 14-cv-00063 at *25-26, 2016 U.S. Dist. LEXIS 73014, 2016 WL 3167176 (M.D. La. June 6, 2016) *citing Rorrer v. City of Stow,* 743 F.3d 1025, 1041 (6th Cir. 2014). *See also Jenkins v. Cleco Power, LLC,* 487 F. 3d 309 (5th Cir. 2007) ("When an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee, the employer violates the ADA."), *citing Beck v. Univ. of Wisc. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir.1996) (failure to communicate indicates bad faith).

Any contention that Ms. Whatley's conduct or manner of requesting accommodations contributed to a breakdown in the interactive process is a factual question unfit for resolution on a motion for summary judgment. *See Stokes v. Nielsen*, 751 F. App'x 451, 455 (5th Cir. 2018) (vacating grant of summary judgment for the employer because a factual dispute existed as to whether the employee caused the breakdown). Accordingly, this is not a basis for a grant of summary judgment. The dispute over which party bears responsibility for the breakdown of communication is for the jury to assign fault.

### E. Defendant's argument that Kay Whatley did not have a physical impairment at relevant time periods misconstrues the timeline.

Defendant's argument that Ms. Whatley was not a qualified individual with a disability is premised on the relevant time period being "when she re-enrolled in the APD training academy."[144] As discussed above, Ms. Whatley has alleged multiple ADA violations over different time periods. And Ms. Whatley concedes that the period of time when she enrolled in the APD training academy is not a relevant time period. However, Ms. Whatley was a qualified individual with a physical impairment that substantially limited a major life activity at these relevant times:

From January 29, 2018, through April 15, 2018, Ms. Whatley was a qualified individual with a disability. This is the time period from when Ms. Whatley first injured her knee at the APD Training Academy, had surgery on September 7, 2018, and until Dr. Stubbs reported that she had reached MMI.[145] During this period of time, without engaging in any meaningful dialogue with Ms. Whatley, Defendant removed Ms. Whatley from the front desk position where she was reasonably accommodated, and demoted her to a clerical staff position in the office, which exacerbated her injury because she was required to stand for long periods of time.[146]

From August 19, 2019, through the end of her employment, Ms. Whatley was a qualified individual with a disability. During this time, Ms. Whatley requested an accommodation to complete

---

[144] R. Doc. 24-1, p. 13.
[145] Exhibit E (Stubbs), M00009, M00145, M00037.
[146] *Id.* at M00145.

he training at the APD training academy, and she requested to return to work as a Deputy Marshal once she was approved for light-duty work.

Defendant does not argue that Ms. Whatley was not a qualified individual during those relevant time periods, therefore, the motion should be denied.

## V.    CONCLUSION

For the reasons stated herein, Defendant has not met his burden for summary judgment and the motion must be denied.

Respectfully Submitted:

**MOST & ASSOCIATES**

*/s/ Hope A. Phelps*
**HOPE PHELPS (La. Bar No. 37259)**
**WILLIAM MOST (La. Bar No. 36914)**
201 St. Charles Ave., Ste. 114, # 101
New Orleans, LA 70170
Tel: 504.256.4615
Email: hopeaphelps@outlook.com
***Counsel for Plaintiff, Patricia "Kay" Whatley***