# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### ALEXANDRIA DIVISION

| | |
|---|---|
| **PATRICIA "KAY" WHATLEY** | **CIVIL DOCKET NO. 1:21-CV-01185** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **JEROME HOPEWELL, ET AL** | **MAGISTRATE JUDGE JOSEPH H.L. PEREZ-MONTES** |

## MEMORANDUM RULING

Plaintiff, Patricia "Kay" Whatley ("Plaintiff"), filed the above-captioned matter on May 4, 2021, seeking relief for employment discrimination under both federal and state law. [Doc. 1]. The Court previously entered summary judgment dismissing Plaintiff's state law claims and those asserted against her former co-workers. *See* [Docs. 10, 23]. Plaintiff's remaining claims are brought under the Americans with Disabilities Act ("ADA") and Title VII against the only remaining Defendant, Alexandria City Marshal, Jerome Hopewell ("Hopewell" or "Defendant"). [Doc. 11].

Now before the Court are a MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S ADA CLAIMS and a MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S TITLE VII CLAIMS ("the Motions") wherein Defendant seeks dismissal of Plaintiff's remaining claims. [Docs. 24, 27]. After careful consideration, and for the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART, Defendant's Motions.

## FACTUAL BACKGROUND

### I.   Plaintiff's Title VII Claims

The Alexandria City Marshal's Office ("City Marshal's Office") hired Plaintiff as an Administrative Assistant on June 29, 2017. [Doc. 11 ¶ 20]. In November 2017,

the City Marshal's Office promoted Plaintiff to the position of Deputy Marshal. [Doc. 11 ¶ 23].

Throughout her employment with the City Marshal's Office, Plaintiff claims that her co-workers and supervisors created a hostile work environment by, among other things, repeatedly: (i) subjecting Plaintiff to inappropriate, unwelcome comments relating to Plaintiff's physical appearance and sex life; and (ii) physically harassing Plaintiff by touching, slapping, and "tasing" her buttocks, and by smelling her hair. [Doc. 39-11, p. 1]. Plaintiff alleges this conduct began on her first day of employment and continued until she resigned on February 4, 2020. [Doc. 27-2, p. 142]; [Doc. 39-11, p. 29]. Defendant denies that the conduct occurred. *See generally* [Doc. 27-1].

## II.   Plaintiff's ADA Claims

### A.   Plaintiff's Initial Injury

In connection with her November 2017 promotion to Deputy Marshal, the City Marshal's Office required Plaintiff to complete a training academy administered by the Alexandria Police Department ("APD"). [Doc. 11, ¶¶ 27–28].[1] The APD training academy involved strenuous physical exercise and, in January 2018, Plaintiff tore her meniscus during a training exercise. [Doc. 27-2, pp. 47–48, 57].

Plaintiff returned to her position as a Deputy Marshal shortly thereafter. [Doc. 39-5, p. 15]. On September 7, 2018, Plaintiff underwent surgery and returned to work

---

[1]     The record indicates that the City Marshal's Office used APD training academy as a means of certifying their employees for Peace Officer Standards and Training ("P.O.S.T."). [Doc. 27-10, p. 77]; *see also McKinney v. Sheriffs Off. Rapides Par.,* No. 1:19-CV-01339, 2021 WL 1083979, at *2, n.5 (W.D. La. Mar. 19, 2021).

approximately twelve weeks later with the assistance of crutches.[2] [Doc. 27-2, p. 48].

When Plaintiff returned to the City Marshal's Office, Defendant initially accommodated Plaintiff by allowing her to work the front door of the City Marshal's Office, a job Plaintiff could perform sitting down. *Id.* at pp. 50, 74. Defendant later moved Plaintiff to an administrative staff position where she filed documents. *Id.* at p. 50. Plaintiff's doctor released Plaintiff back to work without restrictions on February 21, 2019, and Plaintiff reached "maximum medical improvement" in mid-April of 2019. [Doc 25-1, pp. 7, 16].

**B. Plaintiff's Re-Injury**

In the summer of 2019, Defendant informed all Deputy Marshals who were not P.O.S.T. certified that they were required to complete the APD training academy or would be subject to termination. [Doc. 27-2, p. 58]. Plaintiff re-enrolled in the APD training academy, which began in late July 2019. [Doc. 39-7, p. 4]. After completing the first few weeks of training, Plaintiff re-injured her knee, resigned from the APD training academy, and returned to the City Marshal's Office shortly thereafter.[3] [Doc. 27-2, pp. 60–61]. In early September, however, Plaintiff's doctor placed Plaintiff on no-work status and Defendant allowed Plaintiff to take paid leave. [Doc. 27-10, p. 81].[4] In November, Defendant received a letter from Plaintiff's attorney requesting

---

[2]    In the time between Plaintiff's injury and her surgery, Defendant became the City Marshal for the Alexandria City Marshal's Office, the highest position in that office.

[3]    Following her second injury, Plaintiff asked her immediate supervisor, Steve Boeta, if she could attend the less-physically rigorous "Corrections Academy," rather than the training academy conducted by APD. [Doc. 39-5, p. 21].

[4]    Plaintiff's doctor later informed her that she suffered from bursitis, a permanent condition causing pain in her knee. [Doc. 27-2, p. 62].

accommodation for Plaintiff's injury consistent with the work restrictions recommended by her doctor. [Doc. 24-5]. After a month of intermittent correspondence between Defendant and Plaintiff's attorney regarding a suitable position for Plaintiff, Whatley returned to work on December 9, 2019. [Doc. 27-2, p. 86].

Upon her return, Defendant assigned Plaintiff to the same administrative staff position that she had worked following her surgery. *Id.* This position, however, involved a substantial amount of standing, which aggravated Plaintiff's knee. *Id.* When Plaintiff complained that her job duties exacerbated her injury, Defendant reassigned Plaintiff to a position scanning files from a desk. [Doc. 39-2, p. 9].[5]

Plaintiff continued working this desk position until January 31, 2020, when she again went on paid leave. [Doc. 24-2, pp. 63–64]. Plaintiff formally resigned from her position as a Deputy Marshal on February 4, 2020, ostensibly due to "the stress of being subject to a hostile work environment consisting of sexual harassment, discrimination, and retaliation for exercising [her] rights after filing a complaint with the EEOC." [Doc. 39-11, p. 29].

## PROCEDURAL HISTORY

Plaintiff timely filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on January 13, 2020, and received a "right to sue" letter on March 2, 2021. On May 4, 2021, Plaintiff filed this action against the Alexandria City Marshal's Office, Jerome Hopewell, former co-workers Steve Boeta, Harry Robertson,

---

[5]      Plaintiff acknowledges this new position was consistent with the work restrictions recommended by her doctor. [Doc. 27-2, p. 73].

and Chris Pruitt, "Does 1-10," and XYZ Insurance Companies 1-10.  [Doc. 1].
Plaintiff's original complaint alleged causes of action for: (i) Title VII discrimination;
(ii) Title VII retaliation; (iii) ADA discrimination; (iv) ADA retaliation; and (v)
violations of Louisiana law.  *Id.*

On June 21, 2021, defendants filed an Answer [Doc. 5] and a partial motion for
summary judgment [Doc. 6] seeking the dismissal of: (i) all claims against the City
Marshal's Office; (ii) the Title VII and ADA claims levied against all individual
defendants personally; and (iii) certain claims arising under Louisiana law.  Plaintiff
did not oppose dismissal of these claims and the Court subsequently granted
defendants' Motion for Partial Summary Judgment on July 15, 2021.  [Docs. 8, 10].
Plaintiff filed her First Amended Complaint on July 29, 2021.  [Doc. 11].

On September 24, 2021, Defendant Hopewell filed a second motion for partial
summary judgment seeking dismissal of Plaintiff's remaining state-law claims.  [Doc.
14].  The Court granted Defendant's Motion on December 2, 2021.  [Doc. 23].
Hopewell then filed the instant Motions on June 2, 2022, and June 3, 2022, seeking
dismissal of Plaintiff's remaining claims brought under the ADA and Title VII.  [Docs.
24, 27].  Plaintiff opposes both Motions.  [Docs. 39, 44].  The Motions are now ripe for
ruling.

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the pleadings,
including the opposing party's affidavits, "show that there is no dispute as to any
material fact and that the movant is entitled to judgment as a matter of law."  Fed.
R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  In applying

this standard, the Court should construe "all facts and inferences in favor of the nonmoving party." *Deshotel v. Wal-Mart Louisiana, L.L.C.*, 850 F.3d 742, 745 (5th Cir. 2017); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). The party moving for summary judgment bears the burden of demonstrating that there is no genuine issue of material fact as to issues critical to trial that would result in the movant's entitlement to judgment in its favor, including identifying the relevant portions of pleadings and discovery. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). If the movant fails to meet this burden, the court must deny the moving party's motion for summary judgment. *Id.*

If the movant satisfies its burden, however, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* (citing *Celotex*, 477 U.S. at 323). In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no genuine issue for trial – and a grant of summary judgment is warranted – when the record as a whole "could not lead a rational trier of fact to find for the non-moving party[.]" *Id.*

## LAW AND ANALYSIS

### I. Failure to Accommodate

The ADA prohibits covered employers from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). Discrimination includes failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability … unless

such covered entity can demonstrate that the accommodation would impose an undue hardship." 42 U.S.C. § 12112(b)(5)(A).  To succeed on a failure-to-accommodate claim under the ADA, a plaintiff must show that: (i) he is a "qualified individual with a disability;" (ii) his disability and its consequential limitations were "known" by the covered employer; and (iii) the employer failed to make "reasonable accommodations" for such known limitations.  *Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (internal quotation marks omitted).

Plaintiff concedes that she has no failure-to-accommodate claim arising from her second enrollment in the APD training academy in July 2019.[6]  She does, however, claim that Defendant failed to accommodate her on three other occasions, namely: (i) when Plaintiff asked if the City Marshal's Office could change its physical fitness requirements following her 2019 re-injury; (ii) when she requested that she be permitted to attend the Corrections Academy training course rather than the standard APD training academy; and (iii) in December of 2019, when Plaintiff returned from her second injury.  The Court addresses each in turn.

## A. <u>Reasonable Accommodations</u>[7]

Reasonable accommodations include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of

---

[6]    Additionally, the Court notes that any failure-to-accommodate claim arising from Plaintiff's first injury in 2018 is time-barred because Plaintiff did not timely submit an EEOC charge.  *See Manning v. Chevron Chem. Co., LLC,* 332 F.3d 874, 878 (5th Cir.  2003) (citing 42 U.S.C.  § 12117).

[7]    For the purposes of Plaintiff's failure-to-accommodate claims, the Court assumes that Plaintiff can establish that: (i) she is a qualified individual with a disability; and (ii) Defendant knew of her limitations.

equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations." *Thompson v. Microsoft Corp.,* 2 F.4th 460, 467 (5th Cir. 2021) (citing 42 U.S.C. § 12111(9)(B)).  Importantly, however, the ADA provides only that an employee has the right to reasonable accommodation, not to the employee's preferred accommodation. *E.E.O.C. v. Agro Distribution, LLC*, 555 F.3d 462, 471 (5th Cir. 2009).  Further, the ADA does not require that an employer "relieve an employee of any essential functions of his or her job, modify those duties, reassign existing employees to perform those jobs, or hire new employees to do so." *Id.* (citing *Burch v. City of Nacogdoches*, 174 F.3d 615, 621 (5th Cir. 1999)).

### i.   <u>Plaintiff's Request for Modification of Training Requirements</u>

Immediately following Plaintiff's second injury, Plaintiff sent a text message to her supervisor, Steve Boeta, asking whether the City Marshal's Office could change the physical prerequisites for the APD training academy.  [Doc. 39-9].  Fairly read, Plaintiff's text indicates that she asked Boeta if she could simply complete APD's final assessment in lieu of completing the entire APD training academy.[8]  Boeta responded by telling Plaintiff that APD, not the City Marshal's Office, determined the physical requirements for the APD training academy.[9]

---

[8]     Specifically, Plaintiff asked Boeta, "Is this a case which I can perform PT to the best of my physical potential and then as long as I pass within the time constraints at the final PT assessment?"  [Doc. 39-9].

[9]     Plaintiff describes this conversation as an instance where "Defendant would not make the requested reasonable accommodation, punted to an outside agency, and offered no alternative accommodation."  [Doc. 39, p. 20].

While the ADA explicitly contemplates "appropriate adjustment or modifications of examinations" as being reasonable accommodations, Plaintiff has failed to meet her evidentiary burden.  *See* 42 U.S.C. § 12111(9)(B).  Specifically, Plaintiff's opposition memorandum points to nothing showing that the City Marshal's Office had the ability to fulfill Plaintiff's request, that Plaintiff's request was reasonable as a matter of law, or that Boeta's denial of her request constituted a failure to reasonably accommodate.[10]  *See Claiborne v. Recovery Sch. Dist.,* 690 F.App'x 249, 255 (5th Cir. 2017) (summary judgment proper where plaintiff "failed to make the necessary evidentiary showing relative to whether [her preferred accommodation] would satisfactorily accommodate her disability, while still allowing her to properly . . . perform the essential functions of her job.").  There is therefore no genuine dispute of material fact precluding summary judgment as to this claim.

### ii.   <u>Plaintiff's Subsequent Accommodation Requests</u>

Plaintiff next contends that Defendant failed to accommodate her by: (i) denying her request to attend the less-physically rigorous Corrections Academy in lieu of the standard APD training academy;[11] and (ii) assigning her to a position in the "front office" rather than her preferred position working by the front door of the

---

[10]    The record reflects that it is unlikely Plaintiff was in a physical condition to complete the APD final assessment at the time she made this request.  Plaintiff's doctor put her on a "no-work" status following her injury in September of 2019, and Plaintiff remained on either no-work or light-work status until Plaintiff formally resigned in February 2020.  [Doc. 27-10, p. 81]; [Doc. 25-1, pp. 11–13].

[11]    The parties dispute whether Plaintiff actually made this request.  *See* [Doc. 27-10, p. 79]; [Doc. 27-2, p. 59].  Given that this is a Motion for Summary Judgment, the Court takes Plaintiff's deposition testimony at face-value and assumes that Plaintiff did in fact ask to attend the Corrections Academy.

City Marshal's Office.   In essence, Plaintiff argues that her requested accommodations were reasonable because Defendant allegedly accommodated other City Marshal's Office employees in different ways.[12]

Plaintiff misunderstands her burden.  To succeed on a failure-to-accommodate claim, Plaintiff must show that Defendant failed to make reasonable accommodations for Plaintiff's limitations, not that Defendant's chosen accommodations differed from the accommodations she may have preferred.  *See Thompson v. Microsoft Corp.,* 2 F.4th 460, 467 (5th Cir. 2021) (an ADA plaintiff must show that "the employer failed to make reasonable accommodations for [Plaintiff's] known limitations.").  Stated differently, Plaintiff must show that Defendant's accommodations were *un*reasonable.  *Id.* at 469 (an employer wields "the ultimate discretion to choose between effective accommodations").

The record establishes that after Plaintiff suffered her second APD injury, her doctor placed her on no-work status and Defendant allowed Plaintiff to take paid leave.  [Doc. 27-10, p. 81]; [Doc. 25-1, p. 11].  This was a reasonable accommodation.  *See Austgen v. Allied Barton Sec. Servs., L.L.C.*, 815 F.App'x 772, 775 (5th Cir. 2020) ("Placing [plaintiff] on temporary leave of only a few weeks while awaiting his doctor's recommendations on his ability to work was a reasonable accommodation.") (citing *Moss v. Harris Cty. Constable Precinct One,* 851 F.3d 413, 418 (5th Cir. 2017)).  Thereafter, in early November, Defendant and Plaintiff's counsel engaged in a month-

---

[12]     Plaintiff claims, for example, Defendant accommodated several other male deputies by allowing them to work the front door, but accommodated Plaintiff by assigning her to an office position.

long correspondence regarding the work limitations recommended by Plaintiff's doctor.[13]   [Doc. 24-5].   When Plaintiff returned to work on December 9, 2019, her doctor had approved her to perform light-duty work.   Defendant assigned Plaintiff to an office position that Plaintiff claims required her to stand for long periods of time. [Doc. 27-2, pp. 53–54].[14]   When Plaintiff informed Defendant that this position aggravated her injury, Defendant accommodated Plaintiff by assigning her to a different clerical position at a desk.   *Id.* at p. 67.   Again, this was a reasonable accommodation: the ADA explicitly contemplates job reassignment as a means of accommodating a disabled employee.   *See Thompson v. Microsoft Corp.,* 2 F.4th 460, 469 (5th Cir. 2021) (citing 42 U.S.C. § 12111(9)(B)); *see also Loulseged v. Akzo Nobel Inc.,* 178 F.3d 731, 739, n.11 (5th Cir. 1999) ("[A]n employer is free to withdraw an accommodation [if] the replacement accommodation is reasonable.").   Critically, Plaintiff admitted in her deposition that her new position fell within the work restrictions imposed by her doctor and Plaintiff's opposition memorandum fails to otherwise explain why this reassignment was unreasonable.[15]

At bottom, because Defendant had "the ultimate discretion to choose between effective accommodations," Defendant was justified in reassigning Plaintiff – even

---

[13]   This correspondence seems to form the basis for Plaintiff's interactive process claims. *See* [Doc. 39, pp. 9–12].

[14]   The Court notes that although Deputy Marshals are paid more than office workers, Plaintiff's salary was never reduced to that of an office worker despite her reassignment. [Doc. 27-10, p. 79].

[15]   Plaintiff's opposition memorandum devotes a substantial amount of time discussing the ways in which Defendant purportedly accommodated other employees.   However, as explained above, this is not the proper analysis.   Plaintiff fails to cite to any authority indicating why her job reassignment did not constitute a reasonable accommodation.

over her objections – to assignments that fell within the restrictions imposed by her doctor. *Thompson*, 2 F.4th at 469.  Nor was Defendant under any obligation to allow Plaintiff to attend her preferred training course. *See Jennings v. Towers Watson,* 11 F.4th 335, 344 (5th Cir. 2021) (the fact that defendant denied plaintiff's request for a change in defendant's training program irrelevant to plaintiff's failure-to-accommodate claim).  Accordingly, summary judgment is warranted as to Plaintiff's failure-to-accommodate claims.[16]

## II.   <u>Hostile Work Environment</u>

Title VII prohibits the creation of a hostile or abusive work environment. *Lauderdale v. Texas Dep't of Crim. Just., Institutional Div.*, 512 F.3d 157, 162 (5th Cir. 2007) (citing 42 U.S.C. § 2000e–2(a)(1)).[17]  To survive summary judgment on a hostile work environment claim, an employee must establish that: (i) the employee belongs to a protected class; (ii) the employee suffered harassment affecting a "term, condition, or privilege" of her employment; (iii) the harassment was unwelcome; and (iv) the harassment was based on sex. *Wantou v. Wal-Mart Stores Texas, L.L.C.*, 23 F.4th 422, 433 (5th Cir. 2022).  When an employee alleges that harassment occurred at the hands of a coworker, the employee must also establish that the employer knew

---

[16]     Because the Court finds that Defendant's chosen accommodations were reasonable, the Court also dismisses Plaintiff's interactive process claims. *See Austgen v.  Allied Barton Sec.  Servs., L.L.C.,* 815 F.  App'x 772, 776 (5th Cir.  2020) (failure to reasonably accommodate an employee a necessary element of interactive process claims).

[17]     *See also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 106 (2002) ("A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'").

or should have known of the harassment and failed to take prompt remedial action. *Corley v. Louisiana ex rel. Div. of Admin., Off. of Risk Mgmt.,* 816 F. Supp. 2d 297, 311, n.2 (M.D. La. 2011), *aff'd*, 498 F.App'x 448 (5th Cir. 2012).  As a woman, Plaintiff qualifies as a member of a protected class.  *See Lauderdale*, 512 F.3d at 163.

## A.  The Sexual Harassment Affected a Term, Condition, or Privilege of Employment

Plaintiff's Title VII claims are based on allegations that, throughout the entirety of her employment with the City Marshal's Office, her co-workers – specifically Chris Pruitt and Harry Robertson – propositioned her for sexual favors and made other lewd, inappropriate comments about her appearance and her sex life. *See* [Doc. 27-2, p. 142] ("And like I said, [the comments] started from day one all the way til [sic] the end of my employment.").[18]  Among other things, Plaintiff claims that Pruitt and Robertson: (i) "ask[ed] to see [Plaintiff]'s titties;" (ii) asked if Plaintiff could "put [her] pussy over a gear shifter like a girl they knew"; (iii) commented on Plaintiff's "fatass thighs;" (iv) stated that Plaintiff could make a living out of "charging people rent for [her] bed;" (v) declared that Plaintiff was "going home for a quick fuck on lunch" because Plaintiff "opens [her] garage for everyone;" and (vi) threatened to take pictures of Plaintiff naked.  *See* [Doc. 27-1, pp. 11–13]; *see also* [Doc. 27-2, pp. 107–08, 113–14, 127].[19]

---

[18]    Plaintiff catalogued several of Pruitt's and Robertson's comments in a logbook submitted alongside her EEOC charge.  *See* [Doc. 39-11, pp. 31–33].  Additionally, though not submitted as summary judgment evidence by the parties, the Court requested and received complete copies of the depositions of two of Plaintiff's co-workers, both of which corroborate portions of Plaintiff's testimony.

[19]    It should be noted that Plaintiff alleges Pruitt and Robertson made many more comments than those listed above.  *See, e.g.,* [Doc. 11, ¶ 49] (Robertson allegedly told Plaintiff, "A girl with clean feet takes care of her vagina"); *Id.* at ¶ 92 (Pruitt allegedly told Plaintiff,

For harassment to affect a term, condition, or privilege of employment, the conduct at issue must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Wantou,* 23 F.4th at 433.[20]   Title VII is not a general civility code; offensive and unprofessional behavior, standing alone, does not violate Title VII. *Lauderdale*, 512 F.3d at 163. Therefore, in determining the "severity or pervasiveness" of sexual harassment, courts typically consider: (i) the frequency of the conduct; (ii) the conduct's severity; (iii) whether the conduct is physically threatening or humiliating; and (iv) whether the conduct "unreasonably interferes with an employee's work performance." *Wantou*, 23 F.4th at 433 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)).  This is a totality of the circumstances inquiry; no single factor is dispositive. *Id.*

Here, Plaintiff testified in her deposition that Pruitt and Robertson made comments like those listed above five to six times daily, often in front of other City Marshal's Office staff.  *Id.* at pp. 107, 116, 121, 123.  Even aside from the physical

---

"The FBI is after me and I need a place to hide my wiener.  Can you help?"); [Doc. 27-2, p. 108] (Robertson allegedly told Plaintiff, "I brought a bag of cocaine and a hard dick, which one do you want to suck?").

[20]     Importantly, harassment must be *either* severe or pervasive; it need not be both. *See Harvill v. Westward Commc'ns, L.L.C.,* 433 F.3d 428, 436 (5th Cir. 2005) ("[I]solated incidents, if egregious, can alter the terms and conditions of employment."); *see also Herster v. Bd. of Supervisors of Louisiana State Univ.,* 72 F. Supp. 3d 627, 644–45 (M.D. La. 2014) (allegations of small but frequent derogatory comments sufficient to survive summary judgment).  Consequently, "the required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct." *Wantou*, 23 F.4th at 432.

harassment Plaintiff claims she suffered,[21] given the disturbing, graphic sexual nature, and frequency of the statements allegedly made by Pruitt and Robertson, a reasonable jury could conclude that the conduct of Plaintiff's co-workers affected a term, condition, or privilege of her employment.[22]   *See Alaniz v. Zamora-Quezada,* 591 F.3d 761, 772 (5th Cir. 2009) (regular, crude remarks coupled with "frequent inquiries about the plaintiff's sexual activity" can be "sufficiently severe and pervasive to create a hostile work environment, even without evidence of propositioning or inappropriate touching.").[23]

---

[21]     Plaintiff claims that, in April or May of 2019, Pruitt and Robertson shoved her up against a wall and tased her buttocks for approximately five seconds.  [Doc. 27-2, p. 125].

[22]      Plaintiff also claims that her direct supervisor, Steve Boeta, gave her an unsolicited shoulder massage on four or five different occasions over the course of more than two years, and that Defendant himself: (i) smelled her hair three to four times; (ii) occasionally told Plaintiff to wear more makeup; (iii) complimented her nails and hair; and (iv) told Plaintiff that he liked her hair more when she curled it.  [Doc.  27-2, pp.  100–04].  Standing alone, this conduct may not amount to actionable harassment.  *See Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 81 (1998) (Title VII's "prohibition of harassment on the basis of sex requires neither asexuality nor androgyny in the workplace … courts and juries [should] not mistake ordinary socializing in the workplace–such as male-on-male horseplay or intersexual flirtation – for discriminatory 'conditions of employment.'");  *Molden v. E.  Baton Rouge Par. Sch. Bd.*, 715 F.App'x 310, 316 (5th Cir.  2017) ("The legal standard for workplace harassment in this circuit is .  .  .  high.");  *Marquez v. Voicestream Wireless Corp.*, 115 F.App'x 699, 701– 02 (5th Cir.  2004) (no actionable harassment where defendant "did not make any overt sexual advances, did not request any sexual favors, [and] did not engage in any verbal or physical conduct that was sexual in nature[.]").  However, "[a] hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice,'" and the Court must assess the timeline of events as a whole and determine whether each instance of alleged abusive conduct adds to "the alleged aura of hostility." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 106 (2002); *Brooks v.  Grundmann*, 748 F.3d 1273, 1278 (D.C.Cir.2014).  Accordingly, the alleged actions of Boeta and Defendant may be considered together with those of Richardson and Pruitt.

[23]     *See also Farpella-Crosby v. Horizon Health Care,* 97 F.3d 803, 805 (5th Cir. 1996) (finding comments about the plaintiff's proclivity to engage in sexual activity two or three times a week sufficient to support hostile work environment claim); *Herster v. Bd. of Supervisors of Louisiana State Univ.,* 72 F.  Supp. 3d 627, 644–45 (M.D. La. 2014) (finding numerous instances of relatively mildly verbal harassment sufficient to survive summary judgment); *Elwakin v. Target Media Partners Operating Co. LLC,* 901 F. Supp. 2d 730, 754 (E.D. La. 2012) (finding four to five derogatory comments in less than a year sufficient to

## B. <u>The Harassment Was Unwelcome</u>

Fifth Circuit jurisprudence describes "unwelcome" sexual harassment as "sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature that is unwelcome in the sense that it is unsolicited or unincited and is undesirable or offensive to the employee." *Marquez v. Voicestream Wireless Corp.*, 115 F.App'x 699, 701 (5th Cir.2004) (quoting *Wyerick v. Bayou Steel Corp.*, 887 F.2d 1271, 1274 (5th Cir.1989)).  Here, Defendant argues that Plaintiff cannot prove that she perceived Pruitt's and Robertson's conduct as unwelcome because "the evidence shows [Plaintiff] participated in numerous conversations outside of work, including conversations of a sexual nature, with Pruitt and Robertson" during the course of Plaintiff's employment.  [Doc. 27-1, p. 13].  In support of this contention, Defendant points to: (i) several text messages Plaintiff sent in a group chat that included Pruitt and Robertson from February 2018 to July 2019;[24] (ii) an incident discussed at her deposition where Plaintiff purportedly made a sexual joke about an elderly co-worker; and (iii) a video covertly recorded by Plaintiff that shows Plaintiff laughing in response to a joke regarding Robertson's penis.  *Id.* at pp. 14–15.

Despite the summary judgment evidence indicating that Plaintiff, on at least some occasions, participated in the inappropriate workplace conduct, the Court's task

---

survive summary judgment); *Dowdell v. Culpepper & Assocs. Sec. Servs., Inc.*, No. CV 19-11410, 2020 WL 5095274, at *7 (E.D. La. Aug. 28, 2020), *appeal dismissed,* No. 20-30802, 2021 WL 2472264 (5th Cir. Jan. 13, 2021) (plaintiff's claim that, on a single occasion, defendant shoved his hand towards her vagina sufficient to survive summary judgment).

[24]     The group texts Defendant cites to include a message where Plaintiff describes herself as a "professional cuddle[r]," a message where Plaintiff uses the words "pecker" and "hard on," and a picture Plaintiff sent of herself wearing a bikini.

in ruling on a motion for summary judgment is to"[r]eview the facts drawing all inferences favorable to the party opposing the motion and, from that perspective, determine whether there is no genuine issue as to any material fact such that the movant is entitled to judgment as a matter of law." *Wyerick v. Bayou Steel Corp.*, 887 F.2d 1271, 1273–74 (5th Cir. 1989) (internal quotations omitted).   Given this standard, Defendant's limited evidence of Plaintiff's complicity in certain inappropriate sexual discussions is woefully inadequate for the Court to determine that Plaintiff solicited Pruitt's and Robertson's requests for sexual favors or otherwise welcomed their frequent, crude comments regarding her appearance and sex life.[25] *See id.* at 1275 ("A plaintiff's words or acts may, in some circumstances, suggest that sexual comments are welcome, but 'the question whether particular conduct was indeed unwelcome presents difficult problems of proof and turns largely on credibility determinations committed to the trier of fact'"); *Hart v. Starkville Ford-Lincoln-Mercury, Inc.,* No. 1:10CV92-SA-DAS, 2012 WL 426440, at *9 (N.D. Miss. Feb. 9, 2012) (the fact that plaintiff "used curse words and, on one occasion, wore revealing clothing to work …. does not, as a matter of law (or otherwise), offer a blanket license to engage in sexual harassment.").   Moreover, Plaintiff testified at her deposition that: (i) she found Pruitt's and Robertson's comments embarrassing and inappropriate; (ii) she occasionally told them to stop making fun of her; [26]  and (iii) at

---

[25]   Defendant argues that the video of Plaintiff laughing in response to Robertson's joke is not "open to interpretation" because the video "shows [Plaintiff] never objected to the joke, and simply laughed and continued to engage in regular conversation." [Doc. 45, p. 3].

[26]   Jacqueline McCoy, one of Plaintiff's co-workers, likewise testified that she witnessed Plaintiff object to Pruitt's and Robertson's comments on at least one occasion.

some point in time, she informed Defendant directly that she thought she was the victim of sexual harassment.   [Doc. 27-2, pp. 68, 143].   Given the "conflicting descriptions of a muddled set of facts" and, viewed in a light most favorable to Plaintiff, there is certainly a genuine factual dispute in this case as to whether Plaintiff viewed Pruitt's and Robertson's offensive and inappropriate conduct as unwelcome.  *Williams v. City of Tupelo, Mississippi*, 414 F.App'x 689, 696 (5th Cir. 2011); *Mason v. Affordable Rent-To-Own LLC*, No. CIV.A. 13-0233, 2014 WL 4232689, at *14 (W.D. La. Aug. 26, 2014) (summary judgment improper where a defendant's harassment is "objectively offensive" and plaintiff "produce[s] evidence that [defendant's] conduct was not invited.").

## C. <u>The Harassment was Based on Plaintiff's Gender</u>

Plaintiff claims that Pruitt and Robertson repeatedly made disparaging remarks about her sexual activity, propositioned her for sexual favors, and otherwise targeted her with overtly sexual comments throughout the entirety of her employment.  The Fifth Circuit has described such conduct as being "[t]he textbook example of [sexual] harassment[.]"  *See Abbt v. City of Houston*, 28 F.4th 601, 608 (5th Cir. 2022) ("Courts and juries have found the inference of discrimination easy to draw in most male-female sexual harassment situations, because the challenged conduct typically involves explicit or implicit proposals of sexual activity.") (citing *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 80 (1998)).  Accordingly, sufficient evidence supports that the harassment was based on Plaintiff's gender.[27]

---

[27]     With respect to this factor, Defendant only argues that Plaintiff cannot rely upon the alleged tasing incident to support her hostile work environment claim because "there is no evidence [Plaintiff] was allegedly tased because she is a woman." [Doc. 27-1, p.16].  The Court

### D. **Defendant's Knowledge of Plaintiff's Harassment**[28]

Lastly, Defendant argues that Plaintiff's hostile work environment claim fails because there is no evidence that Defendant knew about Pruitt's and Robertson's conduct.  More specifically, Defendant claims that: (i) there is no evidence Plaintiff reported Pruitt's and Robertson's harassment to Defendant or her supervisors; and (ii) there is no way that Plaintiff's supervisors could have otherwise known that Plaintiff was being harassed.  [Doc. 27-1, pp. 16–18].

Defendant's position rests upon disputed facts.  Although the details of the conversation are unclear, Plaintiff testified during her deposition that, at some point in time, she told Hopewell directly that she believed herself to be the victim of sexual harassment.  [Doc. 27-2, p. 142].  Moreover, Plaintiff testified that Defendant

---

disagrees. Although "[s]ex-neutral hostile conduct cannot be used to support a hostile environment claim," *see Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803, 806, n.2 (5th Cir. 1996), the evidence indicates that although Plaintiff worked alongside other women, Plaintiff was the only female Deputy Marshal and the only City Marshal's Office employee allegedly tased.  [Doc. 27-10, p. 66]; *see also Williams v. City of Tupelo, Mississippi*, 414 F.App'x 689, 694 (5th Cir. 2011) (the fact that plaintiff was the only black woman in a white, primarily male workplace relevant to the question of whether harassment based on plaintiff's race or gender).  Viewed against the backdrop of the alleged sexually explicit comments, and viewed in a light most favorable to Plaintiff, a reasonable jury may conclude that Pruitt and Robertson tased Plaintiff because she is a woman.  *See Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1265 (5th Cir. 1991) ("When state of mind is an essential element of the nonmoving party's claim, it is less fashionable to grant summary judgment because a party's state of mind is inherently a question of fact which turns on credibility."); *see also Elwakin v. Target Media Partners Operating Co. LLC*, 901 F. Supp. 2d 730, 756 (E.D. La. 2012) (Fifth Circuit jurisprudence suggests that "where an employee has acted, threatened, or insinuated physical violence, that employee's history of bigoted statements can play a role in determining whether a hostile work environment is present."); *Duhe v. U.S. Postal Serv.*, No. CIV.A. 03-746, 2004 WL 439890, at *7 (E.D. La. Mar. 9, 2004) (sex-neutral harassment accompanying harassment clearly motivated by gender creates a fact issue best decided by a jury).

[28]     Defendant's motion for summary judgment does not argue that Defendant took prompt remedial action in response to Pruitt's and Robertson's conduct.  Accordingly, the Court need not address the issue.

witnessed several of Pruitt's and Robertson's comments firsthand, although she could not specifically recall which comments Defendant heard them make.[29]  Given this evidence, an issue of fact remains as to whether Defendant knew – or should have known – of Pruitt's and Robertson's alleged harassment.  *See Williamson v. City of Houston, Tex.,* 148 F.3d 462, 465 (5th Cir. 1998) ("[C]onstructive notice [of harassment] can result from 'showing the pervasiveness of the harassment'"); *Farpella-Crosby v. Horizon Health Care,* 97 F.3d 803, 808, n.5 (5th Cir. 1996) (whether the harassment "took place in public, under the eye of co-workers or supervisors" relevant to the knowledge element of hostile work environment claim); *Elwakin v. Target Media Partners Operating Co. LLC,* 901 F. Supp. 2d 730, 755 (E.D. La. 2012) ("[A] fact issue can occur as to a [defendant's] knowledge when a [supervisor] was likely to have overheard several of the allegedly discriminatory comments."). Accordingly, the Court denies summary judgment on Plaintiff's claims of a hostile work environment under Title VII.

## III.  **Retaliation**

Lastly, Defendant seeks summary judgment on Plaintiff's retaliation claims brought under both the ADA and Title VII.  Without direct evidence of retaliation,[30] a plaintiff's retaliation claim is governed by the *McDonnell Douglas* burden-shifting

---

[29]    Plaintiff likewise testified that Boeta, her immediate supervisor, often heard Pruitt and Robertson make inappropriate comments.  [Doc. 27-2, p. 131].  In response, Defendant argues unconvincingly that even if Boeta was *in the same room* when Pruitt and Robertson made inappropriate comments to Plaintiff, Plaintiff's claim still fails because there is "no evidence showing [Boeta] actually heard the alleged comments."  [Doc. 27-1, p. 18].

[30]    "Direct evidence is evidence which, if believed, proves the fact of intentional discrimination without inference or presumption." *Brown v. E. Mississippi Elec. Power Ass'n,* 989 F.2d 858, 861 (5th Cir. 1993).

framework. *Smith v. Touro Infirmary,* 2015 WL 5093487, at *2 (E.D. La. Aug. 28, 2015). Under *McDonnell Douglas,* a plaintiff makes a *prima facie* case of retaliation by establishing that: (i) the plaintiff engaged in an activity protected by statute; (ii) her employer took an adverse employment action against her; and (iii) a causal connection exists between the protected activity and the adverse action. *McKinney v. Sheriffs Off. Rapides Par.,* No. 1:19-CV-01339, 2021 WL 1083979, at *10 (W.D. La. Mar. 19, 2021) (citing *Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.,* 730 F.3d 450, 454 (5th Cir. 2013)).[31]

Once the plaintiff carries their *prima facie* burden, the employer is presumed to have retaliated against the plaintiff. *Wheat v. Rush Health Sys., Inc.,* No. 3:13-CV-984-HSO-RHW, 2014 WL 3529798, at *2 (S.D. Miss. July 15, 2014) (citing *McInnis v. Alamo Cmty. College Dist.,* 207 F.3d 276, 279–80 (5th Cir.2000)). To rebut this presumption, the employer must simply "articulate a legitimate . . . nonretaliatory reason for its employment action." *McCoy v. City of Shreveport,* 492 F.3d 551, 557 (5th Cir.2007).

The plaintiff must then show that the employer's articulated reason was pretextual by establishing that their protected activity was a "but-for" cause of the employer's adverse employment action. *Saketkoo v. Administrators of Tulane Educ. Fund,* 31 F.4th 990, 1001–02 (5th Cir. 2022) ("An employee can establish pretext in the context of retaliation 'by showing that a discriminatory motive more likely

---

[31]     The *prima facie* elements of a retaliation claim are the same under both Title VII and the ADA. *See McKinney,* 2021 WL 1083979, at *10, n.12.

motivated her employer's decision.' "). In order to survive a motion for summary judgment, a plaintiff must show a "conflict in substantial evidence" on this issue. *Id.* at 1002.

### A. **Plaintiff's Prima Facie Case**[32]

### i. **Protected Activity**

Verbal opposition to an unlawful employment practice is a protected activity under both Title VII and the ADA. *See* 42 U.S.C. §§ 2000e-3(a), 12203(a). On Friday, January 10, 2020, Plaintiff covertly recorded a meeting with her supervisor, Steve Boeta. At this meeting, Plaintiff informed Boeta that she believed the City Marshal's Office engaged in unlawful activity and intended to file a charge with the EEOC.[33] The Court finds that this constituted a protected activity under both Title VII and the ADA.[34]  *See Aguillard v. Louisiana Coll.,* 824 F.App'x 248, 251 (5th Cir. 2020),

---

[32]    Plaintiff also claims that after she requested appropriate accommodations prior to her return to work on December 9, 2019, Defendant retaliated against her by "reassign[ing] [Plaintiff] to an administrative staff position in the office[.]" [Doc. 39, p. 16].  It is true that Plaintiff engaged in an activity protected by the ADA when she requested a reasonable accommodation prior to returning to work. *Tabatchnik v. Cont'l Airlines*, 262 F. App'x 674, 676 (5th Cir. 2008).  The Court likewise acknowledges that "a transfer . . . involv[ing] a demotion in form or substance can[] rise to the level of a materially adverse employment action." *Sabzevari v. Reliable Life Ins. Co.,* 264 Fed. App'x. 392, 396 (5th Cir. 2008). However, because the Court has already ruled that Plaintiff's job reassignment was a reasonable accommodation under the ADA, Plaintiff's job reassignment cannot constitute an adverse employment action as a matter of law. *See Austgen v. Allied Barton Sec. Servs., L.L.C.*, 815 F.App'x 772, 776 (5th Cir. 2020) ("Because we have found that [the alleged adverse employment action] was a reasonable accommodation in this instance, there is no dispute that it does not constitute an adverse action.").  Defendant is therefore entitled to summary judgment on this claim.

[33]    Plaintiff did not actually file an EEOC charge until February 26, 2020.  [Doc. 39-11, pp. 1–2].

[34]    The exact complaints that Plaintiff made at this meeting are unclear.  In addition to mentioning her potential EEOC charge, Plaintiff indicated that she felt retaliated against, complained about the attitudes of her co-workers, stated that she believed the City Marshal's Office was actively trying to fire her, and asked Steve Boeta how the City Marshal's Office

*cert. denied,* 208 L. Ed. 2d 536, 141 S. Ct. 1079 (2021) ("The ADA and Title VII both prohibit retaliation against individuals who file discrimination charges with the EEOC, testify before the EEOC, assist the EEOC, or participate in EEOC investigations."); *Byers v. Dallas Morning News, Inc.,* 209 F.3d 419, 428 (5th Cir. 2000) ("To satisfy the 'opposition clause,' [plaintiff] need not prove that [defendant's] practices were actually unlawful, but only that [she] had 'a reasonabl[e] belief that the employer was engaged in unlawful employment practices.'"). Accordingly, Plaintiff has established the first element of her *prima facie* claim.

### ii.  <u>Adverse Employment Action</u>

Next, for the purposes of a retaliation claim, an adverse employment action is any action that "well might have dissuaded a reasonable worker from making or

---

would respond to her complaints moving forward. The Court finds, however, that the specific basis of Plaintiff's complaints do not bear on the viability of her retaliation claim. *See Crawford v. Metro. Gov't of Nashville & Davidson Cty., Tenn.,* 555 U.S. 271, 276 (2009) ("When an employee communicates to her employer a belief that the employer has engaged in … a form of employment discrimination, that communication virtually always constitutes the employee's opposition to the activity.") (internal quotations omitted); *id.* at 279, 852 ("If it were clear law that an employee who reported discrimination . . . could be penalized with no remedy, prudent employees would have a good reason to keep quiet about [unlawful acts] against themselves or against others."); *Besser v. Texas Gen. Land Off.,* 834 F.App'x 876, 892 (5th Cir. 2020) (Dennis, J., concurring in part and dissenting in part) ("[T]he 'central purpose' of federal discrimination statutes is to eliminate discrimination by encouraging 'the frank and nondisruptive exchange of ideas between employers and employees'"). What matters instead is that Plaintiff communicated her intent to file an EEOC charge based upon what Plaintiff believed to be unlawful employment practices. *See Amrhein v. Health Care Serv. Corp.,* 546 F.3d 854, 859 (7th Cir. 2008) (treating a threat to file an EEOC charge as a protected activity); *accord, Raney v. Vinson Guard Serv., Inc.,* 120 F.3d 1192, 1197 (11th Cir. 1997); *E.E.O.C. v. L.B. Foster Co.,* 123 F.3d 746, 754 (3d Cir. 1997) ("[Plaintiff] engaged in protected activity when she informed [management] that she intended to file a sex discrimination charge."); *Gifford v. Atchison, Topeka & Santa Fe Ry. Co.,* 685 F.2d 1149, 1156, n.3 (9th Cir. 1982) ("We see no legal distinction to be made between the filing of a charge which is clearly protected . . . and threatening to file a charge."). Viewed in a light most favorable to Plaintiff, a reasonable jury could conclude that Plaintiff's conversation with her supervisor amounted to an act of opposition within the meaning of either Title VII or the ADA.

supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006).  On January 13, 2020 – a mere three days after Plaintiff told her supervisor about her intent to file an EEOC charge – Defendant issued Plaintiff a disciplinary letter reprimanding Plaintiff for "causing severe disruption" by "threatening to sue the Alexandria City Marshal's Office."  [Doc. 39, p. 14].  Defendant ended the letter by warning Plaintiff that "[a]ny further improper conduct described above . . . will result in further discipline, *including, but not limited to, discharge from employment*."  *Id.* (emphasis added).  Even standing alone,[35] a disciplinary letter that includes a threat of termination can constitute an adverse employment action for the purposes of a retaliation claim.  *Willis v. Cleco Corp.,* No. CIV.A. 09-2103, 2011 WL 4443316, at *7 (W.D. La. Sept. 22, 2011); *Carpenter v. Haaland,* No. CV 19-13208, 2021 WL 1198261, at *6 (E.D. La. Mar. 30, 2021) ("Termination would likely dissuade a reasonable worker from willingly participating in an investigation on workplace misconduct.").  Plaintiff has established the second element of her *prima facie* claim.

---

[35]     Several days after threatening Plaintiff's job, Defendant also personally installed several cameras in the City Marshal's Office, one of which was purportedly "pointed directly at [Plaintiff]." *See* [Doc.  44, p.  25]; [Doc.  27-10, pp.  122–25].  Defendant cites to *Stancu v. Hyatt Corp./Hyatt Regency Dallas*, 791 F.App'x 446 (5th Cir.  2019), *King v. Louisiana*, 294 F.App'x 77 (5th Cir. 2008), and *Earle v. Aramark Corp.*, 247 F.App'x 519 (5th Cir. 2007), for the proposition that "a write-up . . . [and] increased scrutiny . . . does not constitute an adverse employment action, for the purposes of a retaliation claim."  [Doc. 27-1, p. 20].  The Court finds these cases inapposite, as they involved performance-related discipline and scrutiny, not increased scrutiny accompanied by a written threat of termination explicitly based upon an employee's "threat[] to sue."

### iii.   <u>Causality</u>

Lastly, a *prima facie* retaliation claim requires that "a causal connection exists between the protected activity and the adverse [employment] action." *Aguillard v. Louisiana Coll.*, 824 F.App'x 248, 251 (5th Cir. 2020), *cert. denied*, 208 L. Ed. 2d 536, 141 S. Ct. 1079 (2021).  Close timing between an employee's protected activity and an adverse employment action can be sufficient evidence of causality so long as the temporal proximity is "very close."  *Id.*; *see also Feist v. La. Dep't of Justice, Office of the Att'y Gen.,* 730 F.3d 450, 454 (5th Cir. 2013) ("holding "[w]hile a four-month gap may be sufficient evidence of causation, a five-month gap is too long absent other evidence.").  Plaintiff told her supervisor that she intended to file an EEOC charge on Friday, January 10, 2020. [Doc. 27-1, p. 16]. On that following Monday, Defendant issued Plaintiff a disciplinary letter.[36]  Thus, the Court finds that Plaintiff has established a *prima facie* case of retaliation.

### B. <u>Defendant's Nonretaliatory Justification</u>

Because the evidence establishes a *prima facie* case of retaliation, Defendant is presumed to have retaliated against Plaintiff.  *McInnis v. Alamo Cmty. College Dist.*, 207 F.3d 276, 279–80 (5th Cir. 2000).  Defendant must now articulate a "legitimate … nonretaliatory reason" explaining his adverse employment action. *Willis v. Cleco Corp.,* No. CIV.A. 09-2103, 2011 WL 4443316, at *8 (W.D. La. Sept. 22, 2011).  Defendant's burden is "only one of production, not persuasion, and involves

---

[36]      Defendant installed the cameras in Plaintiff's office on or about January 17, 2020.

no credibility assessment." *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir.2007). Here, Defendant argues that he had "legitimate, non-discriminatory reasons for the alleged conduct" – specifically, that the letter was a response to Plaintiff's "disrupt[ion] [of] the City Marshal's Office." [Doc. 27-1, p. 21, n.9].[37]

## C. <u>Conflict in Substantial Evidence</u>

Given Defendant's alleged non-discriminatory reason for its adverse employment actions, Plaintiff is charged with establishing that her protected activity constituted a "but-for cause of the adverse employment decision" by showing that Defendant's non-discriminatory justification is pretextual. *Saketkoo v. Administrators of Tulane Educ. Fund,* 31 F.4th 990, 1001–02 (5th Cir. 2022) (internal quotations omitted). At this stage of the analysis, a court must consider "numerous factors, including the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered." *Id.* at 1002. Temporal proximity, standing alone, is insufficient to establish an issue of fact as to pretext. *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 487 (5th Cir. 2008).

The Court concludes that genuine issues of fact preclude summary judgment. The fact that the disciplinary letter explicitly references Plaintiff's "threat[s] to sue" without mentioning any other justification for the disciplinary action suggests that Defendant disciplined Plaintiff solely because she mentioned an EEOC charge during

---

[37]     Defendant likewise explains the installation of the cameras as a means of "remotely monitor[ing] who was in the office – for security."

her meeting with Boeta.[38]  Moreover, although Defendant claims that he disciplined Plaintiff because Plaintiff "disrupt[ed] the City Marshal's Office," Defendant testified under oath that: (i) Plaintiff had never been disciplined before January 13, 2020, and (ii) Plaintiff's disciplinary letter is the only written warning Defendant has ever issued to an employee.  [Doc. 27-10, p. 118].  Thus, Defendant's prior disciplinary practices suggest that he targeted Plaintiff because of her conversation with Boeta, not because Plaintiff disturbed the City Marshal's Office.  Plaintiff's retaliation claim survives summary judgment.

CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

(i)     Defendant's MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S ADA CLAIMS [Doc. 24] is GRANTED IN PART and DENIED IN PART.

(ii)    Defendant's MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S TITLE VII CLAIMS [Doc. 27] is DENIED.

IT IS FURTHER ORDERED that Plaintiff's failure-to-accommodate claims brought under the Americans with Disabilities Act, and retaliation claims arising from her job reassignments are hereby DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that in all other respects, the Motions are DENIED.

---

[38]     The evidence likewise suggests that Defendant's proffered reason for installing the cameras is pretextual.  Although Defendant claims the cameras were installed for security purposes, when Defendant installed the cameras, Plaintiff was the only Deputy Marshal working in an office.  [Doc. 27-10, p. 125].  Further, Defendant has failed to indicate a specific reason why increased security was necessary, and there is nothing in the record suggesting that the City Marshal's Office had a security problem necessitating increased surveillance.

THUS, DONE AND SIGNED in Chambers on this 19th day of October 2022.

_____
DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE